## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

AVI AVRAHAM ZINGER and
AMERICAN QUALITY PRODUCTS
LTD.,

Plaintiffs,

-against-

BEN & JERRY'S HOMEMADE, INC.,
UNILEVER UNITED STATES, INC.
and CONOPCO, INC.,

Defendants.

**Civ. No. 2:22-cv-01154-ES-JBC**

**Hon. Esther Salas**

ORAL ARGUMENT
REQUESTED

Motion Day:  April 12, 2022

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**GIBBONS P.C.**

One Gateway Center
Newark, NJ 07102-5310

**CRAVATH, SWAINE & MOORE LLP**

825 Eighth Avenue
New York, NY 10019

*Attorneys for Defendants*

Dated:  March 29, 2022

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ......................................................................... 5

I.  Parties.................................................................................................... 5

II. Relationship Between AQP and B&J ...................................................... 6

    A.  Prior License Agreements ....................................................... 6

    B.  The License Agreement ........................................................... 7

    C.  B&J Informs AQP that It Will Not Enter Into a New Agreement Following the Expiration of the License Agreement. .......................... 9

III. Procedural History .............................................................................. 10

ARGUMENT ......................................................................................... 11

I.  AQP Has No Reasonable Probability of Success on the Merits. ................ 13

    A.  New York Law Applies to AQP's Claims. ............................... 14

    B.  AQP's Claims Against UNUS and Conopco Have No Reasonable Chance of Success Because They Are Not Parties to the Contract. ................................................................. 15

    C.  AQP's Claim for Wrongful Termination Against B&J Has No Reasonable Chance of Success. ................................................. 16

        i.   There Has Been No Termination. ............................. 17

        ii.  AQP Does Not and Cannot Identify Any Breach That Would Make the Forthcoming Expiration of the License Agreement "Wrongful". ............................. 18

    D.  AQP's Claim for Breach of Contract Against B&J Has No Reasonable Chance of Success. ................................................. 20

        i.   AQP Cannot Identify a Breach and Waived its Claim. ............ 21

i

E.     AQP's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Against B&J Has No Reasonable Chance of Success. ................................................................ 23

      i.     The Implied Covenant Claim Fails Because it is Duplicative. ...................................................... 24

      ii.     The Implied Covenant Claim is Barred by the Contract's Express Terms. ...................................... 25

      iii.     The Purported "Promises" to Renew Are Irrelevant. .............. 31

F.     The 'Unlawful Demands' Are Red Herrings. ..................................... 32

II.     AQP Has Not Shown Irreparable Harm. ........................................................ 34

    A.     AQP Must Meet a Heightened Standard for Showing Irreparable Harm. ................................................................. 34

    B.     AQP Fails to Make Any Showing of Irreparable Harm. .................... 36

III.     The Balance of Equities Weighs Against an Injunction. ............................... 38

IV.     An Injunction Would Not Serve the Public Interest. .................................... 38

CONCLUSION ........................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353 (2019) .......................41

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144
(2002)...........................................................................................................30

*A & V 425 LLC Contracting Co. v. RFD 55th St. LLC*, 830 N.Y.S.2d
637 (Sup. Ct. 2007)......................................................................................15

*Acierno v. New Castle Cty.*, 40 F.3d 645 (3d Cir. 1994)...............................12, 37

*Adiel v. Coca-Cola Bottling Co. of New York*, No. 95 CIV. 0725
(WK), 1995 WL 542432 (S.D.N.Y. Sept. 13, 1995)....................................27

*Allenby, LLC v. Credit Suisse, AG*, 134 A.D.3d 577 (2015) ................................15

*Atlantic City Coin & Slot Serv. Co. v. IGT*, 14 F. Supp. 2d 644 (D.N.J.
1998) ............................................................................................................39

*Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prod., Inc.*, 69 N.J. 123
(1976) ...........................................................................................................29

*Bank of Hope v. Miye Chon*, 938 F.3d 389 (3d Cir. 2019)....................................41

*Bateman v. Ford Motor Co.*, 302 F.2d 63 (3d Cir. 1962)......................................39

*Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d
176 (3d Cir. 2008)....................................................................................12, 36

*Bersin Properties, LLC v. Nomura Credit & Cap., Inc.*, 159 N.Y.S.3d
828 (N.Y. Sup. Ct. 2022) .............................................................................26

*Bevilacque v. Ford Motor Co.*, 199 A.D.2d 359 (1993)........................................16

*Bib Const. Co. v. City of Poughkeepsie*, 273 A.D.2d 186 (2000) ..........................17

*Bronx Auto Mall, Inc. v. Am. Honda Motor Co.*, 113 F.3d 329 (2d Cir.
1997) ............................................................................................................30

iii

*Catlyn & Derzee, Inc. v. Amedore Land Devs.*, LLC, 166 A.D.3d 1137
(2018)...........................................................................................24

*Clifden Futures, LLC v. Man Fin., Inc.*, 858 N.Y.S.2d 580 (Sup. Ct.
2008) .......................................................................................16, 18

*Cohen PDC, LLC v. Cheslock-Bakker Opportunity Fund, LP*, 94
A.D.3d 539 (1st Dep't 2012) ................................................26

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976
F.3d 239 (2d Cir. 2020) ........................................................23

*Deer Park Enterprises, LLC v. Ail Sys., Inc.*, 57 A.D.3d 711 (2008)......................25

*Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159 (3d Cir.
2001) .......................................................................................28

*Goldfarb v. Solimine*, 245 N.J. 326 (2021) .............................................21

*Gottwald v. Sebert*, 193 A.D.3d 573 (1st Dep't 2021) ............................23

*Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.*, 475 F. Supp. 1282
(E.D.N.Y. 1979).......................................................................39

*King Penguin Opportunity Fund III, LLC v. Spectrum Group Mgt.
LLC*, 187 A.D.3d 688 (1st Dep't 2020) ................................23

*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004).........................12

*Lanin v. Borough of Tenafly*, 515 F. App'x 114 (3d Cir. 2013)..............................13

*Logan Advisors, LLC v. Patriarch Partners, LLC*, 63 A.D.3d 440
(2009).......................................................................................24

*Logic Tech. Dev. LLC v. Levy*, Civ. No. 17-04630 (MAS) (TJB), 2021
WL 3884287 (D.N.J. Aug. 31, 2021) ....................................13

*M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324
(W.D.N.Y. 2012) ....................................................................16

*Marine Midland Bank v. Rome Polymer, Inc.*, 244 A.D.2d 967 (4th
Dep't 1997) .............................................................................19

iv

*Mars Assocs., Inc. v. City of New York*, 70 A.D.2d 839 (1st Dep't 1979), *aff'd*, 53 N.Y.2d 627 (1981) .................................................20

*Marvin A.G. v. Decker*, No. CV 20-1689 (ES), 2020 WL 3481746 (D.N.J. June 26, 2020) ...............................................................12

*McCarthy v. Arnold Foods Co.*, 717 F. Supp. 325 (E.``D. Pa. 1989) ....................39

*Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001 (3d Cir. 1980) ..................................................................................40

*Neptune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prod. Div., Litton Sys., Inc.*, 190 N.J. Super. 153 (App. Div. 1983).................39

*Pace Electronics, Inc. v. Canon Computer Systems, Inc.*, 213 F. 3d 118 (3d Cir 2000).......................................................................34, 35

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804 (N.Y. App. Div. 2011) .............................................................16

*Red Online Mktg. Grp., LP v. Revizer, Ltd.*, No. CIV.A. 14-1353, 2014 WL 1327518 (E.D. Pa. Apr. 3, 2014)........................................37

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ...................................13

*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York*, 749 F.2d 124 (2d Cir. 1984)...............................................39

*Samica Enterprises, LLC v. Mail Boxes*, No. CV 06-2800 ODW (CT), 2008 WL 11342744 (C.D. Cal. Apr. 10, 2008)............................12, 36

*SBR Roofing, Inc. v. Richfield Springs Cent. Sch. Dist.*, 303 A.D.2d 886 (2003)..................................................................................17

*Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.*, 66 A.D.3d 985 (N.Y. App. Div. 2009) ...................................................................16

*Seidenberg v. Summit Bank*, 348 N.J. Super. 243 (App. Div. 2002)......................30

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970) ...............39

*Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72 (2000)........................................24

*Silvertop Assocs., Inc. v. Kangaroo Manufacturing, Inc.*, 319 F. Supp. 3d 754 (D.N.J. 2018) ...........................................................36

*Simpson v. Union Oil Co. of Cal.*, 377 U.S. 13 (1964)......................................34, 35

*Smile Train, Inc. v. Ferris Consulting Corp.*, 117 A.D.3d 629 (2014) ..................24

*Sud v. Sud*, 621 N.Y.S.2d 37 (1st Dep't 1995) .......................................................17

*Summit Rest. Repairs & Sales, Inc. v. New York City Dep't of Educ.*, 201 A.D.3d 612 (N.Y. App. Div. 2022) ...............................................17

*Tang v. Jinro Am., Inc.*, No. CV-03-6477 (CPS), 2005 WL 2548267 (E.D.N.Y. Oct. 11, 2005) (E.D.N.Y. Sept. 4, 2008), *adhered to on reconsideration*, No. CV-03-6477CPS CLP, 2008 WL 4163183 (E.D.N.Y. Sept. 4, 2008)............................................................23, 27

*TD Bank N.A. v. Hill*, 928 F.3d 259 (3d Cir. 2019)...................................................40

*Trianco, LLC v. Int'l Bus. Machines Corp.*, 271 F. App'x 198 (3d Cir. 2008) ...................................................................................24, 32

*Twinkle Play Corp. v. Alimar Properties, Ltd.*, 186 A.D.3d 1447 (2020)....................................................................................................23

*Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389 (D.N.J. 1989) ....................................................................................................37

*Williamson v. Delsener*, 59 A.D.3d 291 (1st Dep't 2009)......................................31

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236 (2001)..............................................28

## PRELIMINARY STATEMENT

This case concerns the forthcoming expiration of a license agreement (the "License Agreement") between Plaintiff American Quality Products Ltd. ("AQP") and Defendant Ben & Jerry's Homemade, Inc. ("B&J").[1] The License Agreement will expire, by its terms, on December 31, 2022. The License Agreement provides that B&J has a "right of non-renewal at the end of the stated term[]" that is "absolute". (Zinger Decl., Ex. 6 § 24.11.) Consistent with these provisions, on July 19, 2021, B&J told AQP that it had decided not to enter into a new agreement with AQP after the License Agreement expires.

Nearly eight months after B&J informed AQP of its decision, AQP moves this court for extraordinary interim relief. (Dkt. 4, the "Motion".) The Motion is not, as AQP claims, about preserving the *status quo*; the *status quo* is that the License Agreement will expire by its terms at the end of this year. Instead, the Motion seeks to *alter* the *status quo* by compelling B&J to enter into and perform under a new license agreement written by the Court, not the parties, after the License Agreement written by the parties will have expired. AQP cannot meet the standard for such extraordinary relief; all four factors relevant to the

---

[1] The License Agreement is attached as Exhibit 6 to the Declaration of Avi Zinger ("Zinger Decl."), dated March 11, 2022. (Dkt. 4-2, Ex. 6.)

assessment of mandatory preliminary injunctions weigh firmly against AQP, and its Motion should thus be denied.

**AQP has no reasonable chance of success on the merits.** (*See* Section I, below.)  AQP's Motion is based on three duplicative claims: for "wrongful termination" of contract, breach of contract and breach of the implied covenant of good faith and fair dealing.  Each claim is based on the same theory—namely, that B&J's decision not to execute a *new* license agreement with AQP to take effect after the expiration of the current License Agreement violates AQP's rights under the current License Agreement.  It does not.

Specifically, AQP's wrongful termination claim fails for two reasons. *First*, nothing has been terminated.  It is undisputed that the License Agreement is still in effect today (and it is indisputable that it will not be terminated, but rather expire by its terms, on December 31, 2022).  This fact alone disposes of AQP's claim.  *Second*, AQP fails to identify any breach that could make the License Agreement's forthcoming expiration "wrongful".  AQP cannot point to any obligation under the License Agreement that B&J failed to satisfy.  In fact, the contract's express terms provide that B&J has an absolute right not to renew and that AQP agreed to waive any claims arising from non-renewal of the License Agreement.  (*See* Section I.C, below.)

AQP's breach of contract claim relies on the same allegations as its "wrongful termination" claim and fails for the same reasons.  AQP fails to identify any provision of the License Agreement that B&J breached, let alone any provision compelling the execution of a new agreement beyond 2022.  (*See* Section I.D., below.)

AQP's claim for breach of the implied covenant of good faith and fair dealing fails because under New York law, which governs the License Agreement, a claim of breach of an implied covenant may not rely on the same allegations and seek the same relief as a breach of contract claim; courts routinely reject such claims as duplicative and thus barred as a matter of law.  Moreover, the claim fails because the implied covenant cannot be used to change or contravene the express terms of the contract.  AQP asks the Court to imply into the License Agreement a renewal obligation that would directly contradict multiple express provisions, including the December 2022 expiration of the License Agreement, B&J's "absolute" right not to renew after expiration, and AQP's waiver of any and all claims concerning non-renewal.  (*See* Section I.E., below.)

Finally, AQP's Motion seeks to distract the Court with allegations about Israeli laws and the policies of the U.S., New York and New Jersey concerning Israel.  That is a side show.  AQP does not assert any claim under those

laws or policies, and they are not before this Court.  This is a contract dispute and nothing more.

      **AQP cannot show irreparable harm.**  AQP must make a heightened showing of irreparable harm both because it seeks to alter the *status quo* and because it waited nearly eight months to seek relief.  Despite learning in July 2021 that B&J had decided to let the License Agreement expire at the end of its agreed-upon term, AQP waited until March 2022 to file this lawsuit and move for a preliminary injunction.  If the harms it purportedly faces are irreparable, it would and should have acted promptly to protect itself.

      Even if AQP had moved promptly, however, AQP's efforts to show irreparable harm would fail because AQP expressly and specifically waived any right to claim B&J is liable for the harms AQP now alleges.  Specifically, the License Agreement states that neither B&J nor AQP "will be liable to the other **because of termination or non-renewal** hereof (whether with or without cause) for compensation, reimbursement, or damages on account of the loss of prospective profits on anticipated sales or on account of expenditures, investments, leases or commitments . . . **or for any reason whatsoever**".  (Zinger Decl., Ex. 6, § 24.11 (emphasis added).)  AQP's Motion seeks to do exactly what AQP agreed it could not do.  Moreover, AQP's efforts to show irreparable harm fail for the additional reason that all of the harms that AQP identifies are just the natural

consequence of the ordinary-course expiration of the License Agreement, which AQP has no right to renew and has been aware of for eight months.  (*See* Section II, below.)

Because AQP cannot show any cognizable irreparable harm, whereas B&J would clearly be harmed if forced to provide a license to AQP against its will, the balance of equities also weighs against the grant of an injunction.  (*See* Section III, below.)  And as for the public interest, the various "policies" and Israeli legal provisions on which AQP relies have nothing to do with the contract claims it has brought.  Here, the public interest lies in the principle that agreements must be kept.  That factor too requires denial of AQP's Motion.  (*See* Section IV, below.) Defendants respectfully submit that the Court should enforce the terms of the License Agreement and deny AQP's Motion.

## STATEMENT OF FACTS

I.   **Parties**

Defendant B&J manufactures, distributes and sells ice cream.  (Declaration of David Schwartz, dated March 27, 2022 ("Schwartz Decl.") ¶ 5.)  B&J is a Vermont corporation headquartered in Burlington, Vermont, and is a subsidiary of Defendant Conopco, Inc. ("Conopco").  (*Id.*)  Conopco is a New York corporation headquartered in Englewood Cliffs, New Jersey.  (*Id.* ¶ 4.) Conopco manufactures and sells food, personal care products and household

products.  (*Id.*)  Conopco is a subsidiary of Defendant Unilever United States, Inc.

("UNUS").  (*Id.*)  UNUS is a Delaware corporation headquartered in Englewood

Cliffs, New Jersey.  (*Id.* ¶ 3.)  UNUS is a holding company that provides

management and communications services for its subsidiaries.  (*Id.*)

Plaintiff Avi Avraham Zinger is a citizen of Israel and the sole

beneficial owner of Plaintiff AQP.  (Dkt. 4-2 ("Zinger Decl.") ¶ 1.)  AQP is an

Israeli limited liability company headquartered in Yavne, Israel.  (Dkt. 1

("Complaint") ¶ 2.)

## II.   Relationship Between AQP and B&J

AQP is a licensee of B&J.  (Zinger Decl. ¶ 23.)  Under several license

agreements entered into between the parties over time, B&J has granted AQP

certain rights to manufacture and distribute B&J's proprietary ice cream products

in Israel.  (*Id.* ¶ 24.)

### A.   Prior License Agreements

B&J first entered into a license agreement with AQP in 1987.[2]  (*Id.*,

Ex. 1 (the "1987 Agreement").)  The 1987 Agreement had a term of 10 years, and

provided AQP with an option to renew the contract "for an additional ten (10)

---

[2] Certain of AQP's predecessors, including Quality Guard, Inc. and the
American Company of Ice Cream Manufacturing E.I. Limited, have signed prior
agreements with B&J.  For ease of reference, we refer to these entities collectively
as AQP.  The prior contracts with predecessors of AQP are not at issue.

years from the date of expiration from the initial term upon the same conditions". (*Id.*, Ex. 1 § 3.)

Rather than exercising the renewal option in the 1987 Agreement, in 1998 the parties entered into a new license agreement. (*Id.*, Ex. 2 (the "1998 Agreement").) The term of the 1998 Agreement was seven years, with an option for AQP to renew the agreement "for one (1) additional consecutive term of seven (7) years". (*Id.*, Ex. 2 §§ 4.1, 4.2.)

## B.     The License Agreement

The 1998 Agreement was never renewed. Instead, on January 8, 2004, AQP and B&J executed a new contract—the License Agreement—which remains in effect today.[3] (*Id.,* Ex. 6.) The License Agreement's relevant provisions are set forth below.

- Section 4.1 defines the initial term of the License Agreement as starting retroactively on December 18, 2001 and expiring on June 24, 2005. (*Id.*, Ex. 6 § 4.1.)

- Section 4.2 provides AQP with a right to extend the License Agreement "for one (1) additional consecutive term of seven (7) years". (*Id.*, Ex. 6 § 4.2.)

- Section 24.11 gives B&J an "absolute" right not to renew the License Agreement at the end of the agreement's term and waives any liability for non-renewal. It provides as follows:

---

[3] Unilever N.V., a now-dissolved Unilever entity not named as a defendant, was also a party to the License Agreement.

7

> In the event of termination or non-renewal of this Agreement at the end of the Initial Term or the Renewal Term, or any sooner termination for any reason, Ben & Jerry's will be freed and discharged, and Licensee [AQP] hereby expressly releases and discharges Ben & Jerry's, of and from any and all obligations and liabilities whatsoever, arising hereunder or in connection with any manner or thing relating to, or in any manner connected with, the subject matter of this Agreement. *The foregoing right of termination and the additional right of non-renewal at the end of the stated terms are absolute* (such right of nonrenewal being subject only to the rights of the Licensee pursuant to Section 4.2 with respect to the Renewal Term), and *neither Ben & Jerry's nor the Licensee will be liable to the other because of termination or non-renewal hereof (whether with or without cause)* for compensation, reimbursement, or damages on account of the loss of prospective profits on anticipated sales or on account of expenditures, investments, leases or commitments in connection with the business or goodwill of Ben & Jerry's or Licensee, or for any reason whatsoever. (*Id.*, Ex. 6 § 24.11 (emphasis added).)

- Section 32.1 provides that the "Agreement and any disputes arising under or related thereto (whether for breach of contract, tortious conduct or otherwise) shall be governed and construed in accordance with the laws of the State of New York, without reference to its conflicts of law principles". (*Id.*, Ex. 6 § 32.1.)

In 2005, at the end of the initial term of the License Agreement, AQP exercised its renewal option and extended the term of the License Agreement.  (*Id.* ¶ 48.)

On April 4, 2013, the parties executed an amendment to the License Agreement.  (Schwartz Decl., Ex. A (the "2013 Amendment").)  The 2013 Amendment's relevant provisions are set forth below:

- Section 1 amends Section 4.1 of the License Agreement by extending the term of the License Agreement through December 31, 2017.  (*Id.*, § 1.)

- Section 2 amends Section 4.2 of the License Agreement and provides AQP with a right to extend the License Agreement for "one (1) additional consecutive term of five (5) years".  (*Id.*, § 2.)

AQP exercised its renewal option under Section 2 of the 2013 Amendment, thereby extending the term of the License Agreement through December 31, 2022.  (Zinger Decl. ¶ 37.)  That is now the date on which the License Agreement will expire.

**C.    B&J Informs AQP that It Will Not Enter Into a New Agreement Following the Expiration of the License Agreement.**

In February 2020, Zinger first approached B&J concerning the possible extension of the licensing relationship between the parties beyond the License Agreement's expiration on December 31, 2022.  (*Id.* ¶¶ 46-49.)  At the time, B&J's CEO responded in an email stating:  "I look forward to extending it".

(*Id.* ¶ 50.)  In October 2020, Zinger sent a second email to B&J's CEO, again asking to begin discussions about extending the relationship beyond the expiration of the License Agreement.  (*Id.* ¶ 53.)  B&J's CEO responded to Zinger, stating:  "I agree we need to extend".  (*Id.*)  Following these emails, the parties conducted discussions intended to address concerns raised by the B&J Board about the manner in which B&J's products are sold in Israel.  (*Id.* ¶¶ 54-56.)  The parties never executed a new license agreement extending beyond December 31, 2022.

On July 19, 2021, B&J notified AQP by letter that B&J had decided to "let the License Agreement . . . expire on December 31, 2022".  (*Id.*, Ex. 11 (the "July 2021 Letter") at 1.)  B&J further told AQP in the July 2021 Letter that the "business relationship remains a priority for Ben & Jerry's until the expiration of the License Agreement".  (*Id.*)  On the same day, B&J released a statement on its website stating that B&J would not renew the License Agreement "when it expires at the end of next year".  (*Id.*, Ex. 12.)

The License Agreement is still in effect today and will expire pursuant to its terms on December 31, 2022.  (*Id.* ¶ 37; Br. at 13.)

## III.   <u>Procedural History</u>

On March 3, 2022, Plaintiffs commenced this action.  The Complaint asserts four causes of action against all Defendants:  (i) a claim by Plaintiff AQP for breach of contract; (ii) a claim by Plaintiff AQP for wrongful termination;

(iii) a claim by Plaintiff AQP for breach of the implied covenant of good faith and fair dealing; and (iv) a claim by Plaintiff Zinger for false light invasion of privacy. (Compl. ¶¶ 79-104.)  Plaintiffs served the Complaint on Defendant B&J on March 7, 2022, and on Defendants UNUS and Conopco on March 8, 2022.

On March 11, 2022, AQP filed the present Motion.  (Dkt. 4.)  AQP's Motion seeks an order from the Court enjoining Defendants from (i) "[t]erminating or non-renewing the License Agreement . . . or otherwise changing the status quo of the License Agreement" or (ii) "[i]ssuing any public statements on behalf of B&J regarding termination or non-renewal of the License Agreement", as well as (iii) requiring that "the License Agreement business relationship" remain in effect "until further Order of the Court".  (Dkt. 4-4 ("Proposed Ord."), ¶¶ 1-3.)  The Motion is set to April 12, 2022  (Dkt. 12.)[4]

## ARGUMENT

Preliminary injunctive relief is an "extraordinary remedy and should be granted only in limited circumstances."  *Marvin A.G. v. Decker*, No. CV 20-

---

[4] The License Agreement contains a provision permitting either party to demand that "any claim or controversy concerning the subject matter hereof" be submitted to arbitration.  (Zinger Decl., Ex. 6 § 32.2.)  Defendants have made such a demand, but the parties have agreed to proceed with the Motion in this Court based on Plaintiffs' commitment not to argue that Defendants have thereby waived their arbitration rights.  (*See* Declaration of Gary A. Bornstein, dated March 29, 2022, Exs. 1, 2.)

1689 (ES), 2020 WL 3481746, at *3 (D.N.J. June 26, 2020) (citing *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).)  Moreover, mandatory preliminary injunctions such as the one AQP seeks here are "generally disfavored". *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008).  Accordingly, "[a] party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994).  Here, the requested relief is mandatory, rather than prohibitory, because it would alter the *status quo*.  *See Samica Enterprises, LLC v. Mail Boxes*, No. CV 06-2800 ODW (CT), 2008 WL 11342744, at *2 (C.D. Cal. Apr. 10, 2008) (denying preliminary injunction seeking extension of term of agreements "set to expire by their own terms", and noting that it would "be inappropriate for the Court to alter that status quo by prohibiting (through a *mandatory* injunction) the natural expiration of those agreements") (emphasis in original).  The *status quo* is that the License Agreement will expire by its terms on December 31, 2022, but AQP asks the Court to compel B&J to license its intellectual property, know-how and goodwill after the License Agreement will have expired.

The movant's delay in seeking a preliminary injunction "tends to indicate at least a reduced need for such drastic, speedy action." *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 118 (3d Cir. 2013); *see also Logic Tech. Dev. LLC v.*

12

*Levy*, Civ. No. 17-04630 (MAS) (TJB), 2021 WL 3884287, at *2 (D.N.J. Aug. 31, 2021).

> In order to obtain a preliminary injunction, the movant must show:
>
> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (alterations in original).  As explained below, each of the four preliminary injunction factors weighs firmly against AQP's Motion.

## I.  AQP Has No Reasonable Probability of Success on the Merits.

AQP's Motion is based on three duplicative claims:  "wrongful termination" of contract (Compl. ¶¶ 92-94; Br. 25-30), breach of contract (Compl. ¶¶ 79-91; Br. 31-32) and breach of the implied covenant of good faith and fair dealing (Compl. ¶¶ 95-100; Br. 32-35).[5]  All three claims are based on the same conduct—namely, B&J's decision not to enter into a new license agreement following the expiration of the License Agreement, supposedly because AQP

---

[5] The Complaint purports to assert a fourth cause of action by Plaintiff Zinger against Defendants for "false light invasion of privacy".  (Compl. ¶¶ 101-104.) That claim is irrelevant for purposes of AQP's Motion.

refused to agree to B&J's "unlawful demand".  (Br. 3 ("AQP can show that Defendants are wrongfully terminating the relationship and breaching the Agreement and the implied covenant of good faith and fair dealing by ending AQP's license based on Plaintiffs' refusal to comply with Defendants' unlawful demand.").)  As explained below, none of AQP's claims has a reasonable probability of eventual success on the merits.

> ### A.   New York Law Applies to AQP's Claims.

All three claims at issue in AQP's Motion are subject to the License Agreement's choice of law provision.  Section 32.1 provides that the "Agreement and any disputes *arising under or related thereto (whether for breach of contract, tortious conduct or otherwise)* shall be governed and construed in accordance with *the laws of the State of New York*, without reference to its conflicts of law principles."  (Zinger Decl., Ex. 6 § 32.1 (emphasis added).)  Because each claim is "arising under or related" to the License Agreement, each is governed by "the laws of the State of New York".  (*Id.*)

Despite the New York choice of law provision, AQP's Motion relies primarily on cases applying New Jersey law.  (*See, e.g.,* Br. 32-35.)  AQP fails to mention the choice of law provision and offers no reason to apply New Jersey law, rather than New York law, to its claims.  Accordingly, the Court should apply New

York law to assess AQP's claim and disregard the New Jersey case law cited by AQP.

**B.    AQP's Claims Against UNUS and Conopco Have No Reasonable Chance of Success Because They Are Not Parties to the Contract.**

AQP's claims against UNUS and Conopco have no chance of success because UNUS and Conopco are not (and never have been) parties to the License Agreement. *See, e.g., A & V 425 LLC Contracting Co. v. RFD 55th St. LLC*, 830 N.Y.S.2d 637, 643 (Sup. Ct. 2007) (observing that "in order for someone to be liable for a breach of contract, that person must be a party to the contract"); *Allenby, LLC v. Credit Suisse, AG*, 134 A.D.3d 577, 579 (N.Y. App. Div. 1st Dep't 2015) (dismissing claim for breach of the implied covenant because "Plaintiffs [did] not allege that [Defendant] was a party" and finding that "[i]f there is no contract with [Defendant], there can be no implied covenant claim against it"). AQP does not address the fact that UNUS and Conopco are not parties to the License Agreement and offers no basis to hold them liable for claims based on that agreement.  All three of AQP's claims against UNUS and Conopco—wrongful termination, breach of contract and breach of the implied covenant—fail for that reason alone.

C.   **AQP's Claim for Wrongful Termination Against B&J Has No Reasonable Chance of Success.**

Under New York law, a plaintiff asserting a claim for "wrongful termination" of contract must prove the same elements necessary to prove a claim for breach of contract.  Specifically, the plaintiff must prove that the supposed "termination" violated the agreement.[6]  *See Bevilacque v. Ford Motor Co.*, 199 A.D.2d 359, 361 (N.Y. App. Div. 2d Dep't 1993); *Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.*, 66 A.D.3d 985, 985 (N.Y. App. Div. 2d Dep't 2009).  A plaintiff alleging breach of contract must establish "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages."  *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806 (N.Y. App. Div. 2d Dep't 2011).  To that end, to show defendant's breach, the plaintiff "must identify the specific contractual provision(s) allegedly breached".  *M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 334 (W.D.N.Y. 2012); *see also Clifden Futures, LLC v. Man Fin., Inc.*, 858 N.Y.S.2d 580, 583 (Sup. Ct. 2008) ("[T]he complaint must allege

---

[6] AQP's motion does not articulate the legal basis for its "wrongful termination" claim, and confuses matters further by occasionally describing it as a claim for "wrongful termination of [a] business relationship".  (Compl. ¶ 93; Br. 26.)  AQP fails to cite any case law or statute recognizing a cause of action for "wrongful termination of a business relationship" rather than wrongful termination *of a contract*.

the essential terms of the contract, including the specific provisions upon which liability is predicated."); *Sud v. Sud*, 621 N.Y.S.2d 37 (N.Y. App Div. 1st Dep't 1995) (same).

AQP's wrongful termination claim fails for two independent reasons. *First*, there has been no termination of the License Agreement. *Second*, to the extent AQP claims that the purported "termination" at issue is B&J's decision not to enter into a new agreement upon the expiration of the License Agreement, AQP does not and cannot point to any obligation that would render that decision "wrongful". To the contrary, the plain terms of the contract provide that the License Agreement expires on December 31, 2022; no term of the agreement requires B&J to extend or renew the agreement beyond that date; B&J's right not to enter into a new agreement upon expiration of the current License Agreement is "absolute"; and AQP expressly waived any claims arising from such "non-renewal" of the License Agreement.

      i.    <u>There Has Been No Termination.</u>

To prevail on a wrongful termination claim, the plaintiff must show that the contract at issue has, in fact, been terminated. *See*, *e.g.*, *Summit Rest. Repairs & Sales, Inc. v. New York City Dep't of Educ.*, 201 A.D.3d 612, 612-13 (N.Y. App. Div. 1st Dep't 2022); *Bib Const. Co. v. City of Poughkeepsie*, 273 A.D.2d 186, 187 (N.Y. App. Div. 2d Dep't 2000); *see also SBR Roofing, Inc. v.*

*Richfield Springs Cent. Sch. Dist.*, 303 A.D.2d 886, 887 (N.Y. App. Div. 3d Dep't 2003).  But the License Agreement has *not* been terminated.  All parties agree that the License Agreement is in effect today and will not expire until December 31, 2022.  (Zinger Decl. ¶ 37; *Id.*, Ex. 6 §  4.2 (as amended by § 2 of the 2013 Amendment); Br. 13.)  AQP's wrongful termination claim has no chance of success for this reason alone.

> ii.  <u>AQP Does Not and Cannot Identify Any Breach That Would Make the Forthcoming Expiration of the License Agreement "Wrongful".</u>

Because there has been no termination of the License Agreement, AQP tries to equate "termination" with "non-renewal".  Even if that attempt were successful, however, AQP's wrongful termination claim still would fail because AQP cannot identify any obligation under the License Agreement that B&J has breached by deciding not to renew the contract.  *See Clifden Futures*, 858 N.Y.S.2d at 583.  Specifically, it is undisputed that Section 4.2 of the License Agreement (as amended) provides that the License Agreement will expire on December 31, 2022.  (Zinger Decl. ¶ 37.)  AQP does not and cannot point to any provision in the License Agreement that requires B&J to extend or renew the License Agreement beyond its expiration date.  To the contrary, the License Agreement specifically contemplates its expiration and non-renewal, and the subsequent winding down of the relationship between the parties.  The License

Agreement provides, for example, that upon its expiration "any and all rights granted hereunder to Licensee shall terminate" (Zinger Decl., Ex. 6 § 24); that "Licensee shall immediately cease to manufacture . . . and/or distribute the Proprietary Products" (*id.*, Ex. 6 § 24.1); and that "Licensee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the rights granted herein [and] the Proprietary Mark 'Ben & Jerry's'" (*id.*, Ex. 6 § 24.2).  The December 31, 2022 expiration is therefore neither a "termination" nor "wrongful".

Moreover, in the License Agreement, AQP acknowledges that B&J's right *not* to renew the License Agreement is "absolute", and AQP expressly waived any and all claims arising from non-renewal following expiration of the License Agreement.  Section 24.11 of the License Agreement provides, in relevant part:

> **In the event of** termination or **non-renewal** . . . Ben & Jerry's will be freed and discharged, and **Licensee hereby expressly releases and discharges Ben & Jerry's**, of and from any and all obligations and liabilities whatsoever . . . . **The foregoing** right of termination and the additional **right of non-renewal** at the end of the stated terms **are absolute** . . . .  (*Id.*, Ex. 6, § 24.11 (emphasis added).)

AQP does not and cannot offer any basis for this Court to disregard the express terms of Section 24 generally, and of Section 24.11 specifically.  AQP's release of any claims it believes it may have "in the event of termination or non-renewal", and that pertain to B&J's exercise of its "absolute" right of non-renewal, bar

AQP's wrongful termination claim. *See Marine Midland Bank v. Rome Polymer, Inc.*, 244 A.D.2d 967, 968 (N.Y. App. Div. 4th Dep't 1997) (noting that a "valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties" (internal quotation marks omitted)); *see also*, *e.g.*, *Mars Assocs., Inc. v. City of New York*, 70 A.D.2d 839, 840 (N.Y. App. Div. 1st Dep't 1979) (finding that a contractor waived all claims against the city arising out of the contract because the "clause [was] clear upon its face" and "[b]y it, plaintiff waived and released all claims which it had against defendant arising out of the contract"), *aff'd*, 53 N.Y.2d 627 (1981).

### D. AQP's Claim for Breach of Contract Against B&J Has No Reasonable Chance of Success.

AQP's breach of contract claim relies on the same allegations as AQP's "wrongful termination" claim and fails for the same reasons. Both claims rely on the allegation that B&J "demanded" that AQP violate certain laws and policies as a condition of entering into a *new* contract. (*See* Br. 31 (alleging that B&J's "demand" that under a renewed agreement, AQP "violate Israeli law and the policies of the United States, New Jersey, and New York to continue in business was a breach of the Agreement"); Br. 32 (alleging that B&J "breached" the License Agreement "by announcing that they would terminate B&J's 34-year-old

business relationship with Plaintiffs because of AQP's refusal to comply with Defendants' unlawful demand").)

     i.    <u>AQP Cannot Identify a Breach and Waived its Claim.</u>

        AQP fails to identify any obligation under the License Agreement that B&J breached by making allegedly "unlawful demands" with respect to the terms of any future license or by "announcing" that it would not renew the License Agreement. *See Atkinson*, 205 A.D.2d at 720 (N.Y. App. Div. 2d Dep't 1994) (dismissing claim because of the plaintiff's failure to "allege the provisions of the contract upon which the claim is based").[7]

        The hypothetical demands presented by AQP belie its breach of contract theory. For instance, AQP asserts that B&J "would plainly have breached the Agreement" if B&J "had demanded that the Plaintiffs submit false Israeli tax returns or that they violate Israeli anti-discrimination law by refusing to hire applicants who wore a yarmulke or a hijab as a condition for renewal of the Agreement". (Br. 31.) That is wrong. If B&J demanded that as a condition of entering a new contract, AQP agree to operate under that new agreement in a way

---

[7] As noted above, AQP's motion improperly relies on cases applying New Jersey law (Br. 31-32), despite the applicable New York choice of law provision (*see* Zinger Decl., Ex. 6 § 32.1). But the result is the same under New Jersey law. The breach of contract claim would fail because AQP cannot establish that B&J "did not do what the contract required [it] to do". (Br. 31 (citing *Goldfarb v. Solimine*, 245 N.J. 326, 338-39 (2021)).)

that violates an anti-discrimination law, AQP might (depending on the circumstances) have a claim under that anti-discrimination law, but AQP still would not have a viable claim for *breach of the current License Agreement*.[8]  To prevail on a claim for breach of the current License Agreement, AQP must identify a specific obligation under the License Agreement that B&J failed to satisfy.  But as noted above, AQP cannot and does not identify any right it has—or any obligation B&J has—under the License Agreement to enter into a new license agreement following expiration.

In other words, AQP's breach of contract claim relies on the contention that B&J is obligated to renew the License Agreement and continue in business with AQP after the contract expires on December 31, 2022.  That theory has no reasonable chance of success for the same reasons that AQP's wrongful termination claim has no reasonable chance of success.  The parties agreed that the License Agreement would expire on December 31, 2022; the License Agreement clearly contemplates non-renewal following that expiration; and Section 24.11 of the License Agreement provides that B&J's non-renewal rights are "absolute" and

---

[8] Rather than point to any contractual obligation that B&J has failed to fulfill, AQP references certain obligations that the License Agreement places *on AQP* to comply with applicable laws.  (Br. 9.)  But B&J obviously cannot breach a provision that places obligations on AQP rather than on B&J.  In addition, AQP does not even allege that B&J has caused AQP to breach those provisions.

that "[i]n the event of . . . non-renewal", AQP would "expressly release[] and discharge[]" B&J of any "liabilities"; that "neither [party] will be liable to the other because of termination or non-renewal . . . for any reason whatsoever". (Zinger Decl., Ex. 6 § 24.11.) AQP's breach of contract claim will fail because there was no breach and AQP has waived any right to argue otherwise.

### E. AQP's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Against B&J Has No Reasonable Chance of Success.

AQP seeks a third bite of the breach-of-contract apple by asserting a claim for breach of the implied covenant of good faith and fair dealing based on the very same allegations that form the basis of its claims for wrongful termination and breach of contract. (Br. 34-35 (alleging that B&J violated the implied covenant by "terminat[ing]" the License Agreement because AQP was "unwilling to break the law").) AQP's implied covenant claim fares no better than AQP's other two causes of action.

Under New York law, "[a] covenant of good faith and fair dealing is implied in all contracts, encompassing any promises which a reasonable person in the position of the promisee would be justified in understanding were included *and which are not inconsistent with the terms of the contract*". *Twinkle Play Corp. v. Alimar Properties, Ltd.*, 186 A.D.3d 1447, 1448 (N.Y. App. Div. 2d Dep't 2020) (emphasis added); *see also Tang v. Jinro Am., Inc.*, No. CV-03-6477 (CPS), 2005

WL 2548267, at *9 (E.D.N.Y. Oct. 11, 2005); *Gottwald v. Sebert*, 193 A.D.3d 573, 582 (N.Y. App. Div. 1st Dep't 2021).  Accordingly, an implied covenant cannot "give rise to new, affirmative duties on contracting parties."  *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 248 (2d Cir. 2020); *King Penguin Opportunity Fund III, LLC v. Spectrum Group Mgt. LLC*, 187 A.D.3d 688, 690 (N.Y. App. Div. 1st Dep't 2020).  Here, AQP's claim fails because it is duplicative of its breach of contract claims, and because it seeks to impose new terms and obligations on B&J that are inconsistent with the express terms of the License Agreement.

i.   The Implied Covenant Claim Fails Because it is Duplicative.

AQP's claim for breach of the implied covenant of good faith and fair dealing is based on the very same alleged facts and seeks the very same relief as AQP's claims for breach of contract.  (*See*, *e.g.*, Br. 3, Compl. ¶¶ 84, 98 (alleging that B&J's purportedly unlawful demands support a claim for breach of contract and a claim for breach of the implied covenant).)  New York courts routinely find such claims are duplicative and therefore defective as a matter of law.  *See*, *e.g.*, *Trianco, LLC v. Int'l Bus. Machines Corp.*, 271 F. App'x 198, 204 (3d Cir. 2008) ("Under New York law, a claim for breach of the implied covenant of good faith and fair dealing must be separate from any breach of contract claim"); *Catlyn & Derzee, Inc. v. Amedore Land Devs.*, LLC, 166 A.D.3d 1137, 1140 (N.Y. App.

Div. 3d Dep't 2018) (dismissing implied claim as duplicative because it "arises from the same operative facts and seeks the same damages as the breach of contract claim[s]"); *Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 73 (N.Y. App. Div. 1st Dep't 2000) (affirming dismissal of implied covenant claim "since such a claim may not be used as a substitute for a nonviable claim of breach of contract"); *see also Smile Train, Inc. v. Ferris Consulting Corp.*, 117 A.D.3d 629, 630 (N.Y. App. Div. 1st Dep't 2014); *Logan Advisors, LLC v. Patriarch Partners, LLC*, 63 A.D.3d 440, 443 (N.Y. App. Div. 1st Dep't 2009); *Deer Park Enterprises, LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (N.Y. App. Div. 2d Dep't 2008).  For this reason alone, AQP does not have a reasonable chance of prevailing on its claim for breach of the implied covenant of good faith and fair dealing.

        ii.    <u>The Implied Covenant Claim is Barred by the Contract's Express Terms.</u>

The License Agreement is clear.  Its express terms show that the parties considered when the License Agreement would end and agreed that the benefits of the licensing deal would expire on December 31, 2022.  (Zinger Decl., Ex. 6 §§ 4.1-4.2 (as amended by §§ 1-2 of the 2013 Amendment).)  The express terms also show that the parties considered whether either party should be able to challenge the counterparty's decision not to renew the License Agreement, and agreed that each party's right not to renew is "absolute".  (*Id.*, Ex. 6 § 24.11.)  And as discussed above, the express terms show that the parties considered and agreed

on the particulars of winding down their business relationship following the expiration of the License Agreement.  (*See, e.g.*, *id.*, Ex. 6 § 24.1 (winding down of manufacturing and distribution), §24.2 (winding down of the use of methods and knowhow), §24.3 (cancelation of any registration of the Ben & Jerry's mark); §24.6 (return of confidential information).)

Moreover, the history of the relationship between AQP and B&J also shows that the implied covenant claim has no reasonable chance of success.  Each of the 1987, 1998 and 2004 contracts included express provisions setting forth initial terms and limited renewal terms.  In other words, the parties plainly knew how to negotiate and write renewal provisions into their contracts.

Now, AQP is asking the Court to disregard the express terms to which it signed up and to replace them with contradictory terms that neither party ever agreed to.  That is not the proper role of the implied covenant of good faith and fair dealing.  The implied covenant is a gap-filler intended to address circumstances that the parties did not foresee and address expressly; it cannot be used to change or contravene express terms of a contract addressing circumstances the parties did consider.  *See*, *e.g.*, *Cohen PDC, LLC v. Cheslock-Bakker Opportunity Fund, LP*, 94 A.D.3d 539, 540 (N.Y. App. Div. 1st Dep't 2012) (rejecting plaintiffs' implied covenant claim where there were "express terms and conditions" in the operative contract covering how the issue should be resolved); *see also Bersin Properties,*

*LLC v. Nomura Credit & Cap., Inc.*, 159 N.Y.S.3d 828 (Sup. Ct. 2022) (noting that a "negotiated contract provision . . . cannot be nullified" by the implied covenant, and that "if the contract contains an express covenant governing a subject, courts will not imply a covenant with regard to the same subject").

Specifically, AQP cannot imply into the License Agreement a renewal obligation that would directly contradict the contract's express terms, including the December 31, 2022 expiration date; B&J's "absolute" right not to renew after expiration; and AQP's waiver of any and all claims based on the exercise of that non-renewal right.

Multiple courts have rejected efforts by plaintiffs to do exactly what AQP is trying to do here. *See*, *e.g.*, *Tang v. Jinro Am., Inc.*, No. CV-03-6477 (CPS), 2005 WL 2548267, at *9 (E.D.N.Y. Oct. 11, 2005) (dismissing claim for breach of the implied covenant where "the agreements between Plaintiff and Defendants did not require defendant to renew the contracts after their expiration" and therefore "Defendants could not have breached an implied covenant of good faith and fair dealing by terminating Plaintiff's distribution rights"), *adhered to on reconsideration*, No. CV-03-6477CPS CLP, 2008 WL 4163183 (E.D.N.Y. Sept. 4, 2008); *Adiel v. Coca-Cola Bottling Co. of New York*, No. 95 CIV. 0725 (WK), 1995 WL 542432, at *3 (S.D.N.Y. Sept. 13, 1995) (dismissing claim for breach of the implied covenant where "[t]he agreements at issue . . . in no respect required

27

defendant to renew after" the agreement's expiration date). AQP fails to cite any cases in which a New York court has relied on the implied covenant of good faith and fair dealing to extend a contract beyond its explicit expiration date—even in the absence of an express "absolute" right not to renew the agreement and an attendant waiver.

The cases AQP does rely on are completely inapposite; they involve distinguishable facts and apply New Jersey law, not New York law. (Br. 32-35.) For example, in *Emerson Radio Corp. v. Orion Sales, Inc.*, the plaintiff alleged that its distributor breached the implied covenant by failing to market the plaintiff's products to retailers in good faith, thereby depriving the plaintiff of the "fruits of the contract". 253 F.3d 159, 173 (3d Cir. 2001). That is markedly different than AQP's claim here, which is not about recovering the "fruits" of the License Agreement. Instead, AQP is claiming entitlement to the "fruits" of a *new* contract after the License Agreement will have expired, despite B&J's "absolute" right not to enter into such new agreement. (Zinger Decl., Ex. 6 § 24.11.)

AQP's reliance on the New Jersey Supreme Court's decision in *Wilson* is equally misplaced. (Br. 33, 34 (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 250 (2001).) In *Wilson*, the court allowed plaintiffs to proceed to trial on a claim for breach of the implied covenant, finding that under New Jersey law (which does not apply here) such a claim could be viable where a party with

unilateral discretion over pricing set prices "with the objective of preventing the other party from receiving its reasonably expected fruits under the contract". *Id.* at 251. Here, B&J's decision did not prevent B&J from receiving any "reasonably expected fruits" under the License Agreement because that agreement specifically contemplates that AQP will receive *no* fruits under it after December 31, 2022. In other words, AQP is claiming that B&J's decision breaches an implied duty in the *current* agreement because it will purportedly deprive AQP of the fruits of a *future* agreement that the parties have never executed and that B&J has an *absolute* right never to execute. Moreover, AQP has expressly waived any claim that non-renewal of its license deprives it of any future benefits. (*See* Zinger Decl., Ex. 6 §24.11 ("neither Ben & Jerry's nor the Licensee will be liable to the other because of termination or non-renewal hereof (whether with or without cause) for compensation, reimbursement, or damages *on account of the loss of prospective profits on anticipated sales*" (emphasis added)).). In short, AQP's claims are a far cry from the claims the *Wilson* court allowed to proceed.

Finally, AQP's citation to *Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prod., Inc.*, 69 N.J. 123 (1976) is particularly misplaced. The court there, applying New Jersey law, found that a distributor had breached the implied covenant by terminating an *indefinite* exclusivity agreement with a manufacturer, after actively concealing that decision for several months and encouraging the manufacturer to

enter into a five-year lease for expanded warehouse facilities.  *Id.* at 130.  The

contract and conduct at issue in *Bak-A-Lum* are nothing like the contract and

conduct at issue here.  The *Bak-A-Lum* defendant terminated an ongoing contract

with an indefinite term; B&J is simply allowing an agreement with a set term to

expire.  The *Bak-A-Lum* defendant did not have an absolute right to terminate; B&J

has an absolute right not to renew. The *Bak-A-Lum* plaintiff did not waive any right

to challenge termination; AQP waived all rights to challenge the non-renewal of

the License Agreement.  And unlike the defendant in *Bak-A-Lum*, B&J did not

conceal its decision not to renew but rather informed AQP that it had decided to let

the License Agreement expire more than 17 months before the contract's explicit

expiration date.  (Zinger Decl. ¶ 57; *id.*, Ex. 11 at 1.)  In short, the cases AQP cites

do not support its claim.[9]

---

[9] The other cases AQP cites as purported support for its implied breach claim
are similarly inapposite.  (Br. 32 (citing *Bronx Auto Mall, Inc. v. Am. Honda Motor
Co.*, 113 F.3d 329, 330 (2d Cir. 1997) (involving the prohibition on "false business
practices" under the Franchised Dealer Act of New York); *511 W. 232nd Owners
Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 152-53 (2002) (denying motion to
dismiss where the defendant, a sponsor of a planned apartment co-operative,
allegedly violated the implied covenant by retaining a majority of the shares in the
co-op for itself, which "so drastically undermined the contract that its fundamental
objective—the creation of a viable cooperative—[had] been subverted"); 
*Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 252 (App. Div. 2002) (involving
alleged breaches of implied covenants in employment agreements under New
Jersey law).)

### iii.   The Purported "Promises" to Renew Are Irrelevant.

As purported support for its claim for breach of the implied covenant, AQP contends that B&J "promised AQP that the license would be extended when it ended in 2022". (Br. 34.)  AQP has not, however, identified any remotely enforceable promise, instead relying on laconic, non-committal comments in two emails from B&J's CEO.  (*see* Zinger Decl. ¶ 50 ("I look forward to extending [the License Agreement]"); ¶ 53 ("I agree we need to extend").)  Neither the February 2020 email nor the October 2020 email described by AQP shows any agreement whatsoever.  The License Agreement is a complex 65-page document, but the two emails that AQP identifies do not even address the most basic terms of a new agreement, such as price.  AQP's own contentions belie any effort to claim it believed the emails constituted an enforceable renewal of the License Agreement. AQP contends, for example, that *after the February 2020 and October 2020 emails*, AQP understood that the B&J Board had "doubled down" on its concerns about future sales in Israel; and AQP further contends that it proceeded to discuss the terms of a potential new arrangement with B&J to try to address the Board's "concerns".  (Zinger Decl. ¶¶ 54-56.)  It is thus clear that nobody believed the two emails AQP relies on created a "new" agreement.  Moreover, any effort to claim otherwise would fail under the Statute of Frauds.  *See Williamson v. Delsener*, 59 A.D.3d 291, 291 (N.Y. App. Div. 1st Dep't 2009) (finding that the Statute of

Frauds requires that the terms of any agreement purportedly signed via email be "sufficiently clear and concrete to constitute an enforceable contract").

In any event, such purported "promises" are irrelevant to AQP's claim for breach of the implied covenant of good faith and fair dealing. As noted above, the implied covenant of good faith and fair dealing encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" in a contract. *Twinkle Play Corp.*, 186 A.D.3d at 1448. Statements made years after the execution of a contract clearly were not "included" in or otherwise part of the parties' agreement.

### F.    The 'Unlawful Demands' Are Red Herrings.

Having failed to identify any contractual basis for its claims, AQP argues that B&J's decision not to renew its licensing arrangement with AQP (after the expiration of the current License Agreement) is improper because it is predicated on AQP's refusal to accede to B&J's purportedly "unlawful demand". (Br. 26-30.) That argument is a red herring. AQP has not asserted (because it could not assert) claims under any of the laws or policies that B&J's purported "demand" supposedly violated. Instead, it chose to assert claims sounding in contract. But the contract it relies on does not give it any right to be a B&J licensee beyond December 31, 2022, and makes clear that B&J's right not to continue the relationship with AQP—as a matter of contract—is "absolute".

32

The whole point of the parties' agreement to make that right "absolute" is to render B&J's reasons for non-renewal completely irrelevant.

The cases relied on by AQP, again, are inapposite.  (Br. 25 (citing *Simpson v. Union Oil Co. of Cal.*, 377 U.S. 13 (1964) and *Pace Electronics, Inc. v. Canon Computer Systems, Inc.*, 213 F. 3d 118 (3d Cir 2000).)  In *Simpson* and *Pace*, plaintiffs challenged an anticompetitive scheme under the antitrust laws, and claimed that their termination as distributors furthered the restriction on competition, thereby supporting their *antitrust* claims.  *See Simpson*, 377 U.S. at 15 (holding that coercive consignment agreements between companies and their lessees can constitute an *antitrust* violation); *Pace Electronics*, 213 F.3d at 122-24 (holding that termination of a dealer's contract can constitute *antitrust* injury).  In other words, in both cases, the plaintiff alleged that the termination of its distribution contract was in violation of at least one statute (in *Simpson*, the Sherman Act and Clayton Act; in *Pace*, the Clayton Act), and the plaintiff brought its claims under those statutes.  Neither case suggests that an anticompetitive termination could have supported a *contract* claim against defendants there.  AQP, however, is trying to bootstrap allegations of violations of foreign law and various policies, which AQP chose *not* to pursue, as the basis for the contractual claims it did choose to pursue.  Neither *Simpson* nor *Pace* allows that.  Simply put, even if B&J had "demand[ed]" that AQP take actions that would not be permitted under

Israeli law (as AQP claims) as a condition for executing a new license agreement, that would not violate any *contractual* right AQP has under the current License Agreement.

## II.   **AQP Has Not Shown Irreparable Harm.**

### A.   **AQP Must Meet a Heightened Standard for Showing Irreparable Harm.**

AQP must make a heightened showing of irreparable harm for two independent reasons.

*First*, the Motion seeks to alter the *status quo*.  AQP claims that "[t]he threatened termination of their license will disrupt and substantially change the *status quo*." (Br. 24.)  That is wrong.  There is no "threatened termination"; there is only the agreed-to *expiration* of the License Agreement by its terms on December 31, 2022.  The *status quo* is therefore that the Agreement will expire at the end of the year.  *See Samica Enterprises*, 2008 WL 11342744, at *2 (holding that when dealing with a term agreement, the *status quo* is expiration at the end of the term, rather than renewal).  AQP seeks to alter the *status quo* by compelling B&J to enter into and perform under a new license agreement written by the Court, after the License Agreement written by the parties will have expired.  (Proposed Ord. ¶ 3.)  B&J did not agree to a licensing arrangement that extended into 2023, but AQP asks this Court to compel B&J to grant such a license.  Therefore, AQP must (but cannot) meet the "higher standard" of irreparable harm applied to

requests for mandatory relief. *Silvertop Assocs., Inc. v. Kangaroo Manufacturing, Inc.*, 319 F. Supp. 3d 754, 761 (D.N.J. 2018) (an injunction is mandatory if it "alter[s] the status quo by commanding some positive act"); *Bennington Foods LLC*, 528 F.3d at 179 (holding that "where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction"); *see also Acierno*, 40 F.3d at 647 (a party seeking a mandatory injunction bears a "particularly heavy burden").

*Second*, AQP delayed in filing the Motion. B&J told AQP in July 2021 that it would let the License Agreement expire, but AQP waited until March 2022 to file this Motion. AQP's nearly eight-month delay undermines the credibility of its irreparable harm allegations. *See Red Online Mktg. Grp., LP v. Revizer, Ltd.*, No. Civ. A. 14-1353, 2014 WL 1327518, at *3 (E.D. Pa. Apr. 3, 2014) (noting that "the nearly eight-month delay between [plaintiff's] discovery of [defendant's] alleged violation of the Agreement and the filing of this lawsuit undermines [plaintiff's] argument that it will suffer 'irreparable harm'"); *see also Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 395 (D.N.J. 1989) (denying preliminary injunction and noting that "plaintiff's seven month delay . . . can be taken as a factor tending to minimize [plaintiff's] claim of irreparable harm" where plaintiff knew of the alleged harm but waited months to

move for a preliminary injunction.).  Had AQP moved with alacrity, it could have issued an arbitration demand to B&J in the summer of 2021 and been positioned to have its claims resolved well before the natural expiration of the License Agreement at the end of this year.  That AQP waited the better part of a year to file its lawsuit belies its contention that it faces irreparable harm warranting emergency relief; the Court should not provide emergency relief needed (if at all) only due to AQP's inaction.

### B.  AQP Fails to Make Any Showing of Irreparable Harm.

AQP cannot make any showing of irreparable harm, let alone a showing that would meet the heightened standard applicable here.  The reasons for this are simple.  *First*, all of AQP's purported harms flow from B&J's decision not to renew the License Agreement, but AQP expressly waived any right to claim that B&J's decision not to renew the license caused AQP any harms.  *Second*, even aside from the waiver, AQP's purported harms do not flow from the violation of any cognizable legal right.  Accordingly, AQP has no basis to seek relief from the Court.

In Section 24.11 of the License Agreement, AQP and B&J agreed that "neither Ben & Jerry's nor the Licensee will be liable to the other because of . . . non-renewal . . . for compensation, reimbursement, or damages on account of the loss of prospective profits on anticipated sales, or on account of expenditures,

investments, leases or commitments in connection with the business or goodwill of Ben & Jerry's or Licensee, *or for any reason whatsoever*". (Zinger Decl., Ex. 6 § 24.11.) AQP seeks to do exactly what it agreed it could not do—namely, hold B&J liable "because of . . . non-renewal" for purported harms it specifically waived. (*Id.*; *see* Br. 35-39.) AQP cannot show irreparable harm because it waived any right to hold B&J liable for the supposed harms on which its Motion rests.

But even aside from that express waiver, AQP provides no explanation how the agreed-to, expected expiration of an agreement by its terms can give rise to irreparable harm. And of course, AQP cites no cases where a court found irreparable harm based on a contract's expiration by its terms. Instead, AQP relies on inapposite cases primarily involving statutory claims by franchisees arising from the early *termination* of contracts, not the *expiration* of contracts on their own terms. (Br. 35-39.)[10] But AQP is not a franchisee, and the License

---

[10] *See, e.g., Atlantic City Coin & Slot Serv. Co. v. IGT*, 14 F. Supp. 2d 644, 658 (D.N.J. 1998) (involving claims under the New Jersey Franchise Practices Act); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1199-1200 (2d Cir. 1970) (involving claims under the Federal Dealer Act); *Bateman v. Ford Motor Co.*, 302 F.2d 63, 64 (3d Cir. 1962) (involving claims under the Automobile Dealers Day in Court Act); *Neptune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prod. Div., Litton Sys., Inc.*, 190 N.J. Super. 153, 156 (App. Div. 1983) (involving claim under New Jersey Franchise Practices Act); *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York*, 749 F.2d 124, 125 (2d Cir. 1984) (involving early termination of distribution agreement); *Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.*, 475 F. Supp. 1282, 1286 (E.D.N.Y. 1979)

Agreement has not been and will not be terminated.  Simply put, AQP's alleged

loss of benefits it never had and never was entitled to is not irreparable harm.

## III.  <u>The Balance of Equities Weighs Against an Injunction.</u>

The balance of equities also weighs in favor of denying the Motion.

On one hand, AQP is challenging B&J's exercise of a right AQP agreed was

"absolute", asserting claims it agreed to waive, and lamenting the "loss" of benefits

it never was entitled to.  Moreover, AQP is asking the Court to grant it emergency

relief that is necessitated (if at all) because of its eight-month delay in prosecuting

its deficient claims.  On the other hand, the requested relief would deprive B&J of

its bargained-for absolute right not to continue the licensing relationship beyond

December 31, 2022, forcing it to license its intellectual property, know-how and

goodwill to a party it does not wish to license on terms it has not agreed to.  *See*

*Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980)

(noting that "commercial parties are free to contract as they desire").

## IV.  <u>An Injunction Would Not Serve the Public Interest.</u>

"To determine where the public interest lies, a court should weigh the

'advantages and disadvantages' to the public of 'employing the extraordinary

---

(involving early termination of car dealership's franchise agreements); *but see*,
*McCarthy v. Arnold Foods Co.*, 717 F. Supp. 325, 332 (E.D. Pa. 1989) (denying a
motion for preliminary injunction despite finding irreparable harm because
"termination was properly exercised by the defendant").

remedy of injunction over the other available methods of enforcement.'" *See TD Bank N.A. v. Hill*, 928 F.3d 259, 284 (3d Cir. 2019). Here, the public interest would not be served by the requested injunction.

AQP's public interest arguments are meritless. For instance, AQP points to the purported policies of Israel, the United States, New Jersey and New York as support for an injunction. (Br. 39-40.) However, AQP's reliance on such policies is misplaced. Even accepting AQP's interpretation of these policies as true, the policies still would not support an order compelling B&J to continue using *AQP* as its distributor in Israel. At most, these policies could require B&J to continue selling its products in Israel through a licensee of its choice. But AQP cannot claim that any policy requires B&J to continue using *AQP* as its licensee in Israel. Accordingly, AQP's appeals to purported laws and policies concerning sales in Israel provide no support for the extraordinary, mandatory relief that AQP is seeking.

AQP also claims that an injunction would serve the public interest by "prevent[ing] one company from interfering with the legally protected contractual rights of another", and thereby "deter[ring] similar interference in the future". (Br. 40.) But as noted above, AQP has not identified any "legally protected contractual rights" with which B&J has "interfered". In fact, it is AQP that seeks to interfere with B&J's contractual right to let the contract expire at the end of its

term.  AQP and B&J are sophisticated parties whose prior agreements show that they knew how to negotiate renewal provisions into their contracts when they wanted to.  The public interest therefore would best be served by enforcing the terms that the parties negotiated.  *See 159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 356 (2019) ("In New York, agreements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language pursuant to our strong public policy favoring freedom of contract.").

Finally, the request to enjoin B&J from "[i]ssuing any public statements . . . regarding termination or non-renewal of the License Agreement" seeks an improper prior restraint on B&J's speech.  Courts have long recognized the public interest against prior restraints, particularly where political speech may be chilled as a result.  *See, e.g., Bank of Hope v. Miye Chon*, 938 F.3d 389, 394 (3d Cir. 2019) ("[P]rior restraints on speech are presumptively unconstitutional and subject to strict scrutiny.").

For all these reasons, the public interest weighs heavily against the issuance of a preliminary injunction in this case, and the motion should be denied.

## **CONCLUSION**

For the foregoing reasons, AQP's request for a preliminary injunction should be denied.

40

Date:  March 29, 2022

Respectfully submitted,

BEN & JERRY'S HOMEMADE, INC.,
UNILEVER UNITED STATES, INC. AND
CONOPCO, INC.

By their attorneys,

/s/ Jennifer A. Hradil

_____
Jennifer A. Hradil
Thomas R. Valen
Jeffrey L. Nagel (admitted *pro hac vice*)
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
jhradil@gibbonslaw.com
tvalen@gibbonslaw.com
jnagel@gibbonslaw.com

Gary A. Bornstein (admitted *pro hac vice*)
Yonatan Even (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
gbornstein@cravath.com
yeven@cravath.com