## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AVI AVRAHAM ZINGER,** | |
| *and* | |
| **AMERICAN QUALITY PRODUCTS LTD.,** | |
| *Plaintiffs* | |
| *v.* | |
| **BEN & JERRY'S HOMEMADE, INC.** | Civil Case No.: |
| *and* | 2:22cv01154(KM)(JBC) |
| **UNILEVER UNITED STATES, INC.** | |
| *and* | |
| **CONOPCO, INC.,** | |
| *Defendants* | |

---

### REPLY MEMORANDUM ON BEHALF OF PLAINTIFFS
### IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................1

ARGUMENT

I.
THE STATUS QUO IS MAINTAINED BY CONTINUING THE
CURRENT COMMERCIAL RELATIONSHIP THAT HAS BEEN
IN EFFECT SINCE 2004 ..........................................................3

II.
A CONTRACTUAL RIGHT OF TERMINATION OR NON-RENEWAL DOES
NOT AUTHORIZE NON-RENEWAL WHEN BASED ON A PARTY'S
REFUSAL TO VIOLATE THE LAW .................................................4

III.
APPLICATION OF NEW YORK OR NEW JERSEY LAW
PRODUCES THE SAME RESULT, AQP PREVAILS ...........................5

IV.
AQP HAS SUFFERED AND WILL CONTINUE TO SUFFER
IRREPARABLE HARM UNLESS THE DEFENDANTS ARE ENJOINED .........5

V.
AQP DID NOT DELAY ITS REQUEST FOR INJUNCTIVE RELIEF.................7

VI.
AQP IS LIKELY TO SUCCEED  ON THE MERITS............................8

    A. Defendants Breached  Terms of the License Agreement and the
       Outline of Terms and Violated the Consent Decree ..................8

    B. Defendants Violated the Implied Covenant of Good Faith and
       Fair Dealing ...........................................................10

VII.
THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST
FAVOR A PRELIMINARY INJUNCTION...........................................12

VIII.
UNILEVER UNITED STATES AND CONOPCO
ARE PROPER PARTIES AND SHOULD BE ENJOINED...................................12

CONCLUSION .........................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Ahmed Elkoulily. M.D. P.C. v. New York State Catholic Health Plan*
  61 N.Y.S.3d 83 (App. Div. 2017) ...................................................................11

*American S.S. Owners Mut. Protection and Indem. Ass'n. Inc.*
 *v. American Boat Co., LLC ...*
  2012 A.M.C 1504 (S.D.N.Y. 2012) .................................................................13

*Atlantic City Coin & Slot Service Co., Inc. v. IGT*
  14 F. Supp.2d 644 (D.N.J. 1998) .................................................................6, 7

*Atlas Commc'ns Tech., Inc. v. DCX Tech Servs., LLC*
  2020 WL 5105197 (D.N.J. 2020) ...................................................................13

*Clark v. Thruway Fasteners, Inc.*
  954 N.Y.S. 2d 318 (2021); 100 A.D. 3d 1435 (App. Div. N.Y. 2012) ...........4

*Dahlberg Bros., Inc. v. Ford Motor Co.*
  272 Minn. 264 (1965) ......................................................................................3

*Fox v. Starbucks Corp.*
  2021 WL 4255029 (S.D.N.Y. Sept. 13, 2021) ................................................4

*Graceway Pharm., LLC v. Perrigo Co.*
  722 F. Supp.2d 566 (D.N.J. 2010) ..................................................................7

*Hurd v. Hodge*
  334 U.S. 24 (1948) ..........................................................................................4

*In re Accutane Litig.*
  235 N.J. 229 (2018) ........................................................................................6

*Interphoto Corp. v. Minolta Corp.*
  295 F. Supp. 711 (S.D.N.Y. 1960 ) ................................................................5

*Intirtool, Ltd. v. Texar Corp.*
    369 F.3d 1289 (Fed. Cir. 2004) .......................................................................7

*Jakes-Johnson v. Gottlieb*
    161 N.Y.S.3d 585 (App. Div. 2021)...............................................................11

*Janmort Leasing, Inc. v. Econo-Car International, Inc.*
    475 F. Supp. 1282 (E.D.N.Y. 1979) ................................................................6

*Lea v. Vasco Products, Inc.*
    81 F.2d 1011 (5th Cir. 1936) ...........................................................................3

*Mastrio v. Sebelius*
    768 F.3d 116 (2d Cir. 2014)..............................................................................3

*MBIA Ins. Corp. v. Royal Bank of Can.*
    706 F. Supp. 2d 380 (S.D.N.Y. 2009) ...........................................................13

*Milsen Co. v. Southland Corp.*
    454 F.2d 363 (7th Cir. 1971) ...........................................................................5

*O'Sullivan v. Mallon*
    160 N.J. Super. 416, 418 (1978) ......................................................................4

*Pace Electronics, Inc. v. Canon Computer Systems, Inc.*
    213 F.3d 118 (3d Cir. 2000)..............................................................................5

*Petermann v. International Bhd. Of Teamsters*
    174 Cal. App. 2d 184 (1959) ............................................................................4

*Pierce v. Ortho Pharm. Corp.*
    84 N.J. 58 (1980)...............................................................................................4

*Praefke Auto Electric & Battery Co, Inc. v. Tecumseh Products Co.*
    123 F. Supp.2d 470 (E.D. Wis. 2000)..............................................................3

*Radwan v. Beecham Labs.*
    850 F.2d 147 (3d Cir. 1988)..............................................................................4

*Reach Acad. For Boys & Girls, Inc. v. Del. Department of Educ.*

8 F. Supp. 3d 574 (D. Del 2014)....................................................................3

*Samica Enterprises, LLC v. Mail Boxes USA, Inc.*
2008 WL 11342744 (C.D. Cal., April 10, 2008).............................................3

*Saxon Constr. & Mgmt. Corp. v. Masterclean of North Carolina, Inc.*
273 N.J. Super. 231 (1994)............................................................................5

*Semmes Motors, Inc. v. Ford Motor Co.*
429 F.2d 1197 (2d Cir. 1970).........................................................................6

*Sensient Colors, Inc. v. Allstate Ins. Co.*
193 N.J. 373 (2008) ......................................................................................6

*Simpson v. Union Oil Co. of Cal.*
377 U.S. 13 (1964).........................................................................................5

*Sobosle v. United States Steel Corp.*
359 F.2d 7 (3d Cir. 1966)...............................................................................7

*Sons of Thunder, Inc. v. Borden, Inc.*
148 N.J. 396 (1997) .....................................................................................11

*Syracuse Ortho. Specialists, P.C. v. Hootnick*
839 N.Y.S.2d 897 (App. Div. 2007).............................................................11

*Town of Newton v. Rumery*
480 U.S. 386 (1987).....................................................................................4, 5

*USX Corp. v. Penn Cent Corp.*
130 F.3d 562 (3d Cir 1997)..........................................................................13

*W.R. Grace v. Local 759*
461 U.S. 757 (1983).......................................................................................4

*Zydus Worldwide DMCC v. Teva API INC.*
461 F. Supp. 3d 119 (D.N.J. 2020)................................................................6

## INTRODUCTION

Defendants distort this case by pejoratively diminishing as a "red herring" (Def. Memorandum ("Opp.") 32-34) the central legal doctrine that is really the Great White Whale of this case. They derogate as a "side show" (Opp. 3) Unilever's unlawful demand that American Quality Products Ltd ("AQP") violate (a) Israeli anti-discrimination and anti-boycott law, (b) the 2001 antitrust consent decree of the Israeli Competition Authority ("ICA"), (c) United States export law, and (d) the pro-competition and anti-boycott laws and public policies of the United States and many U.S. States, including New York and New Jersey. Defendants cannot reduce this case to "nothing more" than a routine "contract dispute" over refusal to renew a license under an agreement that authorizes an "absolute" right not to renew. That effort ignores universally accepted law that condemns termination of a business relationship over one party's refusal to commit an unlawful act.

In their Opposition, Defendants effectively concede that the **only** reason for not renewing AQP's license is AQP's refusal to engage in illegal conduct. They do not dispute AQP's understanding of the Israeli and American laws and policies that Defendants' demand would have forced AQP to violate.

Nor do Defendants dispute the sworn evidence of injury that AQP has suffered and is likely to suffer if there is no prompt judicial relief. AQP timely sought a court order when it became clear that all other efforts to induce the Defendants to withdraw

1

their unlawful announcement had failed, and that the projected termination of the license was having a destructive impact.

Defendants violated the explicit provision of the License Agreement they now invoke when they demanded that AQP flout Israeli and American law. Contrary to Defendants' assertion, AQP's Motion specifies numerous breaches of the License Agreement and the Israeli Consent Decree by the Defendants. Sections 15.20, 15.23, 15.24, and 27.3 of the License Agreement bind the parties to comply with all applicable laws and regulations and with U.S. export law, which includes anti-boycott provisions.

While this case is being litigated, this Court should maintain the status quo – continued operation, under existing contractual terms, of the business relationship that Avi Zinger ("Avi"), AQP, and Ben & Jerry's ("B&J") have had for 34 years under the License Agreement that has governed this relationship since 2004. That is the last uncontested status preceding the pending controversy.

The record amply supports all the conditions for issuance of a preliminary injunction regardless of whether substantive New Jersey or New York law applies. AQP will suffer irreparable harm unless the Court issues an order prohibiting termination of the existing License Agreement. Defendants will suffer no harm – indeed, they will probably benefit commercially and financially – if the injunction issues. And the public interest justifies anti-boycott relief.

2

## ARGUMENT

## I.

## THE STATUS QUO IS MAINTAINED BY CONTINUING THE CURRENT COMMERCIAL RELATIONSHIP IN EFFECT SINCE 2004

Courts have issued preliminary injunctions to prevent the interruption of a consistent course of commercial relations on the ground that such a court order maintains the status quo as "the last actual, peaceable, uncontested status which preceded the pending controversy." *Mastrio v. Sebelius,* 768 F.3d 116, 120 (2d Cir. 2014); *Praefke Auto Electric & Battery Co, Inc. v. Tecumseh Products Co.,* 123 F. Supp.2d 470, 473 (E.D. Wis. 2000) (enjoining termination of second-tier distributor). *See also Lea v. Vasco Products, Inc.*, 81 F.2d 1011 (5th Cir. 1936) (enjoining termination of 9-year distribution contract); *Dahlberg Bros., Inc. v. Ford Motor Co.,* 272 Minn. 264 (1965) (enjoining termination of 36-year dealership); *Reach Acad. For Boys & Girls, Inc. v. Del. Department of Educ.,* 8 F. Supp. 3d 574 (D. Del 2014) (enjoining cancellation of a school charter.)

The principal precedent that Defendants cite – *Samica Enterprises, LLC v. Mail Boxes USA, Inc.*, 2008 WL 11342744 (C.D. Cal., April 10, 2008) (Opp. 12, 34) – concerned a plaintiff's effort "to rewrite . . . agreements by relieving Plaintiffs of the obligations to pay renewal fees and undertaking the contractually agreed-upon upgrades." *Id.* at * 2. In this case, AQP requests no "rewriting." A preliminary

injunction would continue the business relationship pending further order of the court precisely as it has been maintained heretofore.

## II.

### A CONTRACTUAL RIGHT OF TERMINATION OR NON-RENEWAL DOES NOT AUTHORIZE NON-RENEWAL WHEN BASED ON A PARTY'S REFUSAL TO VIOLATE THE LAW

Many courts recognize, and New Jersey law emphatically declares, that even at-will employment, which is terminable for any reason or for no reason at all, "may not be terminated . . . in retaliation for . . . refusal to perform an illegal act." *O'Sullivan v. Mallon*, 160 N.J. Super. 416, 418 (1978); *Radwan v. Beecham Labs.*, 850 F.2d 147, 151-52 (3d Cir. 1988); *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 69 (1980); *Fox v. Starbucks Corp.*, 2021 WL 4255029 (S.D.N.Y. Sept. 13, 2021) (Both New York and federal law prohibit terminating an employee in retaliation for the employee's participation in protected activity); *Clark v. Thruway Fasteners, Inc.*, 954 N.Y.S. 2d 318 (App. Div. N.Y. 2012); 100 A.D. 3d 1435 (App. Div. N.Y. 2012) (at will employee may not be terminated for statutorily impermissible reasons); *Petermann v. International Bhd. Of Teamsters*, 174 Cal. App. 2d 184 (1959) (refusal to commit perjury).

It is axiomatic that a court may refuse to enforce a contract that violates public policy. *E.g*., *W.R. Grace v. Local 759*, 461 U.S. 757, 766 (1983) (citing *Hurd v. Hodge*, 334 U.S. 24, 34-35 (1948). "A promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by

4

enforcement of the agreement." *Town of Newton v. Rumery,* 480 U.S. 386, 392 (1987). In New Jersey, for example, courts have declined to enforce contracts that violate statutes, promote crime, interfere with the administration of justice, encourage divorce, violate public morality, or restrain trade. *E.g.*, *Saxon Constr. & Mgmt. Corp. v. Masterclean of North Carolina, Inc.,* 273 N.J. Super. 231 (1994).

By the same token, Defendants may not refuse to renew AQP's license on the ground that AQP rejected their demand that it engage in illegal acts in Israel. A hypothetical illustrates the point. A leading competitor of B&J's ice cream in Israel is Haagen-Dazs, which is owned by General Mills. If a Unilever executive had asked AQP to damage a Haagen-Dazs storage facility in Israel, Unilever could surely not condition renewal of AQP's license on compliance with that illegal request.

Defendants contend that the U.S. Supreme Court's decision in *Simpson v. Union Oil Co. of Cal.*, 377 U.S. 13 (1964), and the Third Circuit's decision in *Pace Electronics, Inc. v. Canon Computer Systems, Inc.*, 213 F.3d 118 (3d Cir. 2000), are distinguishable because they are "*antitrust* claims." (Opp. 33; emphasis in original). They overlook the fact that their violation of the 2001 Israeli Consent Decree was in fact an *antitrust* violation. Israel Economic Competition Law, 5748-1988, section 20-21; https://www.gov.il/en/departments/legalinfo/competitionlaw.

Termination of a distributor is, moreover, "a traditional method of furthering" an antitrust conspiracy. *Interphoto Corp. v. Minolta Corp.*, 295 F. Supp. 711, 723 (S.D.N.Y. 1960 ), *aff'd*, 417 F.2d 621. In *Milsen Co. v. Southland Corp.*, 454 F.2d

363, 366 (7th Cir. 1971), the court granted a preliminary injunction enjoining termination of a franchise agreement to protect "the vested interest a franchisee builds in his business through years of effort and expenditure."

## III.

## APPLICATION OF NEW YORK OR NEW JERSEY LAW PRODUCES THE SAME RESULT, AQP PREVAILS

Federal law applies to the preliminary injunction standard, and state law applies to the merits claims. (*See* Plaintiffs' moving brief.) As spelled out in Plaintiffs' moving brief, AQP prevails on its claims under both New York and New Jersey law. In the event of a conflict, this Court applies the choice of law principles of the forum State of New Jersey. *E.g., Zydus Worldwide DMCC v. Teva API INC.,* 461 F. Supp. 3d 119 (D.N.J. 2020). The public policy interests of New Jersey law control when there is a conflict. *Sensient Colors, Inc. v. Allstate Ins. Co.,* 193 N.J. 373, 394 (2008); *In re Accutane Litig.*, 235 N.J. 229, 259-262 (2018).

## IV.

## AQP HAS SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF

The Second Circuit has said, "[i]n this circuit it is firmly settled that the loss or destruction of a going business constitutes irreparable harm." *Janmort Leasing, Inc. v. Econo-Car International, Inc.,* 475 F. Supp. 1282, 1294 (E.D.N.Y. 1979). This rule derives from Judge Henry Friendly's opinion in *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2d Cir. 1970), which the Third Circuit follows.

*Atlantic City Coin & Slot Service Co., Inc. v. IGT*, 14 F. Supp.2d 644, 667 (D.N.J. 1998) ("[i]n the Third Circuit *Semmes* has given rise to a significant progeny of courts following its lead in concluding that the termination of a long-standing business relationship can result in irreparable harm."). The uncontradicted evidence in the verified complaint and the affidavit submitted in support of the motion for a preliminary injunction demonstrate that the Defendants' conduct is destroying a "going business" by terminating "a long-standing business relationship."

**V.**

**AQP DID NOT DELAY ITS REQUEST FOR INJUNCTIVE RELIEF**

In order to prevail on their claim that delay (laches) bars AQP's request for injunctive relief the Defendants must show that "the delay [was] unreasonable and cause[d] prejudice." *Sobosle v. United States Steel Corp.,* 359 F.2d 7, 12-13 (3d Cir. 1966). This is a dual requirement – the delay must be "unreasonable and inexcusable" and there must be "material prejudice attributable to the delay." *Graceway Pharm., LLC v. Perrigo Co.*, 722 F. Supp.2d 566, 570 (D.N.J. 2010), (quoting *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1290 (Fed. Cir. 2004)). Defendants have met neither requirement.

First, there was no unreasonable delay. Defendants' termination announcement was promptly met with public condemnation and sanctions. In the United States, state pension funds began removing Unilever stock from their investment portfolios and members of the United States Congress asked the

7

Securities and Exchange Commission to investigate.  AQP trusted that the intense adverse public reaction in the United States and Israel would compel Defendants to recognize the error of their ways and generate a reversal of Unilever's announced intention without the need for litigation. On February 10, 2022, however, Alan Jope, CEO of Unilever, reported to the media that Ben & Jerry's was working on a "new arrangement" for sales in Israel. (*See* http://www.jpost.com/bds-threat/article-696097.) That is when it became apparent that Defendants would not reverse course, and AQP filed suit three weeks after that announcement.

Second, Defendants have specified no prejudice resulting from the alleged delay.

## VI.

## AQP IS LIKELY TO SUCCEED ON THE MERITS

### A.   Defendants Breached Terms of the License Agreement and the Outline of Terms and Violated the Consent Decree

Contrary to Defendants' assertions, AQP has identified multiple provisions of the License Agreement violated by Unilever. For example, Section 15.24 of the Agreement declares that "no party shall be required hereunder to act or omit to act in any way that it believes in good faith would violate [any of the export control laws or regulations of the United States]." The Export Control Reform Act of 2018, 50 U.S.C. 4801-4852 ("ECRA"), prohibits companies from, *inter alia,* refusing or agreeing to refuse to do business or taking discriminatory acts for boycott-related

8

reasons. Defendants breached Section 15.24 when they demanded that AQP participate in a boycott of parts of Israel.

Sections 15.20, 15.23, and 27.3 of the License Agreement require AQP to (a) "use its best efforts to ensure that it and all entities dealing with [it] comply with 'all applicable national, or local laws and regulations,'" (b) "promptly notify Ben & Jerry's" if it "knows or has reason to believe that any act or refrainment from acting required by or contemplated under this Agreement violates any law, rule or regulation . . . of the Territory or any political or governmental subdivision thereof," and (c) "comply with all laws applicable to the manufacture . . . sale and distribution of the Products in the Territory." Contrary to the argument made by the Defendants in footnote 8 (Opp. 22), these provisions do not "place obligations on AQP rather than on B&J." The Defendants are also prohibited from taking steps designed to coerce AQP to violate laws that the Agreement obliges AQP to obey. It is a necessary corollary. Just as AQP is prohibited from violating the law, so too are Defendants prohibited from demanding AQP violate the law. Furthermore, if Defendants are not expressly bound by these provisions, their implied covenant of good faith and fair dealing – discussed *infra* – has been violated by the Defendants' unlawful demand.

Unilever also breached Section 24.10 of the License Agreement, which prohibits all parties, in the event of termination or non-renewal, from "mak[ing] any public statement to the media or otherwise, except to the extent that such is legally

required." Unilever's public statement announcing its intended non-renewal of AQP's license blatantly violated this provision.

Defendants also violated the 2001 Outline of Terms, which was entered into simultaneously with the Consent Decree, and which is incorporated by reference in the License Agreement. It provides that AQP has the exclusive right to distribute Ben & Jerry's products in Israel, including the Areas. Defendants' announcement that they will not renew the License Agreement and will pursue other arrangements for the distribution of Ben & Jerry's ice cream in Israel conflicts with the Outline of Terms. The Consent Decree, which was negotiated at the same time as the Outline of Terms, prohibits Defendants from "narrow[ing] the scope of" the license granted to AQP or "degrad[ing] the terms" of the license without the approval of the ICA, Israel's antitrust authority. It also prohibits B&J, Unilever, and Strauss (another Unilever ice cream brand) from taking any action that might "interfere with the activities of [AQP]in the field of frozen desserts generally and, particularly, in the distribution and marketing of Ben & Jerry's products." (Consent Decree, Exhibit to Declaration of Avi Zinger filed March 11, 2022) Defendants have breached most, if not all, provisions of the Consent Decree.

### B.   Defendants Also Violated the Implied Covenant of Good Faith and Fair Dealing

AQP's three separate claims assert different legal grounds for relief. The

wrongful termination claim rests on undisputed allegations that Defendants will not renew the License Agreement solely because AQP refused to violate Israeli and United States laws and policies prohibiting boycott and discrimination. AQP's breach-of-contract claim rests on allegations that Defendants violated explicit terms of the License Agreement. AQP's implied covenant claim rests on allegations that Defendants violated implied terms of the License Agreement.

All States – including New York and New Jersey – recognize an implied covenant of good faith in every contract, regardless of termination and renewal provisions. *E.g., Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420-425 (1997); *Syracuse Ortho. Specialists, P.C. v. Hootnick*, 839 N.Y.S.2d 897, 899 (App. Div. 2007). Both jurisdictions permit plaintiffs to sue for both breach of contract and for breach of the implied covenant of good faith and fair dealing. *E.g.*, *Jakes-Johnson v. Gottlieb*, 161 N.Y.S.3d 585 (App. Div. 2021); *Sons of Thunder, supra* at 420-425. *See also Ahmed Elkoulily. M.D. P.C. v. New York State Catholic Health Plan*, 61 N.Y.S.3d 83, 86-87 (App. Div. 2017).

Defendants violated the implied covenant of good faith and fair dealing by seeking in bad faith to prevent AQP from performing under the License Agreement and terminating AQP when AQP refused to unlawfully violate the terms of the License Agreement that directed compliance with the law. Every contract includes "an implied undertaking on the part of each party" not to "intentionally and purposely do anything to prevent the other party from carrying out the agreement."

11

*Hootnick*, *supra* at 899. The duty of good faith and fair dealing created an implied understanding that Defendants would not demand AQP violate the law in order to maintain their business relationship. Moreover, Defendants repeatedly told AQP that the License Agreement would be renewed. AQP relied upon those representations, particularly on assurances made to Avi and AQP in light of past business practices and their 34-year relationship with Ben & Jerry's.

## VII.

## THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR A PRELIMINARY INJUNCTION

Defendants' announcement that it will not renew AQP's license has caused irreparable harm to AQP's business. By contrast, if a court enjoins B&J's proposed termination of its profitable 34-year business relationship with a licensee who has consistently been given unqualified praise for the pendency of this lawsuit, B&J will suffer no legally cognizable harm. As for the public interest, the actions taken by New York and New Jersey and many other states as a result of the proposed termination speak loudly against Defendants. The public interest includes a recognition that the Plaintiffs advocate – *i.e.*, that laws and policies of a jurisdiction will be honored and enforced. As Avi Zinger recently wrote in an Op-Ed, "After three decades, I am being forced out of my license because I refuse to discriminate against my neighbors." (Declaration of Avi Zinger, April 3, 2022)

12

## VIII.

## UNILEVER UNITED STATES AND CONOPCO
## ARE PROPER PARTIES AND SHOULD BE ENJOINED

Defendants argue that Unilever USA ("UUSA") and Conopco (collectively, "Unilever" or the "Unilever defendants") are not bound by the License Agreement because it was signed by Unilever N.V. (Opp. 15.) Non-signatories are, however, bound by a contract "if their actions show that they are in privity of contract or that they assumed obligations under the contract," *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 397 (S.D.N.Y. 2009), or if they "directly benefit" from the contract. *E.g.*, *American S.S. Owners Mut. Protection and Indem. Ass'n. Inc. v. American Boat Co., LLC*, 2012 A.M.C 1504, 2012 WL527209, *4-5 (S.D.N.Y. 2012); *USX Corp. v. Penn Cent Corp.,* 130 F.3d 562,566 (3d Cir 1997); *Atlas Commc'ns Tech., Inc. v. DCX Tech Servs., LLC,* 2020 WL 5105197 (D.N.J. 2020). The Unilever defendants assumed obligations under, and directly benefit from, the License Agreement.

Defendant UUSA is a wholly owned subsidiary of Unilever N.V. Its own subsidiaries include B&J and defendant Conopco. Consequently, any profits derived from the commercial relationship with AQP accrue to the direct benefit of UUSA. The first page of the License Agreement specifically refers and applies to "Affiliates," which include the Unilever defendants. UUSA and Conopco have

assumed the obligations of Unilever N.V. under the License Agreement, and they directly benefit from it. Conopco is the entity that receives AQP's royalty payments under Section 12.2 of the License Agreement, and both entities are insured under Section 21.1.

AQP deals with the U.S. Unilever companies, not with their European counterparts. UUSA appointed one of own its executives to serve as B&J's CEO and to act as AQP's main point of contact in executing the License Agreement. Matthew McCarthy is the UUSA executive who serves in this role at present. McCarthy assured Avi that his license would be renewed and then, after Avi refused the illegal demand that he restrict his territory, McCarthy was the one to inform Avi that in fact his license would not be renewed.

Moreover, UUSA and Conopco are expressly bound by the Israeli Consent Decree. In addition, their counsel, acting on their behalf, sent AQP a letter demanding arbitration of the dispute under the terms of the License Agreement. It ignores reality to treat them as strangers to this lawsuit.

## CONCLUSION

For the foregoing reasons and the reasons provided in AQP's Memorandum for Preliminary Injunctive Relief, the preliminary injunction requested by AQP should be granted.

Greenberg Dauber Epstein and Tucker
Attorneys for Plaintiffs

*/s/Edward J. Dauber*

By: _____
Edward J. Dauber, Esq.
Linda G. Harvey, Esq.

*Of Counsel:*
Nathan Lewin, Esq.
LEWIN & LEWIN, LLP
888 17th Street, NW, Fourth Floor
Washington, DC 20006

L. Rachel Lerman, Esq.
Alyza D. Lewin, Esq.
The Louis D. Brandeis Center
For Human Rights Under Law
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, DC 20006

L. Marc Zell, Adv.
Zell, Aron & Co.
34 Ben Yehuda Street, 15th Floor
Jerusalem 9423001
ISRAEL