Edward J. Dauber, Esq.
Linda G. Harvey, Esq.
GREENBERG DAUBER EPSTEIN & TUCKER, P.C.
One Gateway Center, Suite 600
Newark, New Jersey 07102
edauber@greenbergdauber.com
lharvey@greenbergdauber.com
(973) 643-3700

*Attorneys for Plaintiffs Avi Avraham Zinger and*
*American Quality Products Ltd.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AVI AVRAHAM ZINGER,** and **AMERICAN QUALITY PRODUCTS LTD.,**<br><br>Plaintiffs,<br><br>v.<br><br>**BEN & JERRY'S HOMEMADE, INC., UNILEVER UNITED STATES, INC.** and **CONOPCO, INC.,**<br><br>Defendants. | Civil Case No.: 2:22-cv01154 (ES)(JBC)<br><br>**DECLARATION OF AVI AVRAHAM ZINGER IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |

I, Avi Avraham Zinger, of full age, hereby declare as follows:

1. I am a Plaintiff in the present case and a citizen of Israel. I am the sole ultimate beneficial owner of co-Plaintiff American Quality Products Ltd. ("AQP"), through an intermediate holding company. AQP is an Israeli corporation. I am the president of AQP. I submit this Declaration in

Further Support of Plaintiffs' Motion for a Preliminary Injunction. I have personal knowledge of the facts set forth herein.

2. Attached hereto is an OP-ED I authored and which was recently published on the Barri Weiss website "Common Sense" that addresses some of the pertinent issues in this case. The content of the OP-ED is true to the best of my knowledge, information and belief.

Pursuant to 28 U.S.C. §1746(1), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 5 , 2022

By: _____
      Avi Avraham Zinger

2

# Why I'm Suing Ben & Jerry's

**After 30 years of selling ice cream in Israel, the company wants me to boycott my neighbors. I refuse.**



Avi Zinger
Mar 28

876
260



A delivery truck outside the Ben & Jerry's factory in Be'er Tuvia, Israel. (Emmanuel Dunand via Getty Images)

In the mid-1980s, during a trip to Vermont, I discovered a fledgling ice cream company called Ben & Jerry's. I was impressed by its quality, and set up a meeting with Ben Cohen. We bonded immediately, and I pitched him a plan to bring Ben & Jerry's to Israel. That's how I became the company's first licensee.

But now, after three decades, I am being forced out of my license because I refuse to discriminate against my neighbors.

Let me explain.

Before most Americans had even heard of Ben & Jerry's, in 1988 I opened a scoop shop in Tel Aviv. People loved it. I began manufacturing, selling and distributing Chunky Monkey and Cherry Garcia to Israeli and Palestinian cities. Muslims, Jews, Christians, Druze—everyone ate it up.

For almost 35 years—at my factory in southern Israel, at our scoop shops, and with the drivers and distributors who take our product to markets across Israel and to Palestinian cities and towns—I have had the privilege of working with an incredible range of people. Religious and secular Arabs and Israelis, Sudanese and Ethiopian refugees, immigrants struggling to learn Hebrew, and people with disabilities. Some of them have worked with me for decades. We've devoted our lives to Ben & Jerry's and become an extended family, forging personal friendships with U.S. employees, management and leadership.

I share the company's commitment to social justice and have invested tremendous energy and personal resources in programs that foster coexistence and tolerance between Palestinians and Israelis. Among them: Middle East Entrepreneurs of Tomorrow, an M.I.T.-affiliated program that teaches Palestinian and Israeli high school students entrepreneurial skills; Seeds of Peace, which brings together Israeli and Palestinian youth; the Ethiopian National Project, which helps Ethiopian immigrants assimilate to Israel; Global Learning and Observations to Benefit the Environment, a science-education program sponsored by NASA that includes Arab and Jewish schoolchildren; Jordan River Village, a Paul Newman initiative that gives terminally ill children and their families the opportunity to have a week-long sleep-away camp experience; and Kids4Peace, the name of which speaks for itself.

For decades, Ben & Jerry's Israel has supported these causes and more, including initiatives I developed like "Fruits of Peace"—a project to strengthen economic cooperation between Israelis and Palestinians by developing ice cream flavors using ingredients sourced from local Palestinian farmers. But the anti-Israel Boycott, Divestment and Sanctions movement, which does not support coexistence, prevented us from moving forward on this program, which opened economic doors for Palestinians like no other.

Contrary to what you may have read, BDS is not about opposing a particular Israeli policy. It is about opposing Israel's very existence, and thus it rejects any effort to "normalize" relations between Israelis and Palestinians. BDS cares more about ending Israel entirely than providing economic opportunities to Palestinians.

For years, the BDS movement has been targeting Ben & Jerry's headquarters in Vermont, demanding the company end sales in what it calls the "Occupied Palestinian Territory." But the primary consumers in those territories are Palestinians. In other words: BDS activists wanted Ben & Jerry's to "help" Palestinians by depriving them of jobs (and ice cream).

Ben & Jerry's resisted the pressure. The company's board visited us twice in Israel and saw how Palestinians and Israelis benefited from our coexistence projects and social mission work. Everything changed last May when the pressure reached a boiling point, and Ben & Jerry's insisted I stop providing ice cream to my customers in East Jerusalem and the West Bank.

I could not comply. I refuse to discriminate, and I strongly believe that boycotts are not the path to peace in the Middle East. But most significant of all: the Ben & Jerry's directive is against the law.

Israel's anti-discrimination law prohibits discriminating against individuals based on residence. The company's directive also breaches Israel's anti-boycott law; American anti-boycott laws and policies; the terms of my license agreement; and the terms of a consent decree that Ben & Jerry's and Unilever, Ben & Jerry's' parent company, signed as a condition of Israel's approval of the Ben & Jerry's-Unilever merger.

Requiring that I stop selling my ice cream to any customers—Palestinians or Israelis, Christians or Druze—based on where they live is illegal. That is why Ben & Jerry's' claim that this is not a boycott of Israel is disingenuous. Under the law, no one can lawfully do what Ben & Jerry's is demanding I do. So unless Ben & Jerry's finds someone willing to violate the law and go against Israeli and U.S. public policy, there will be no Ben & Jerry's anywhere in Israel when my current license ends at the end of this year.

I proposed alternatives. I suggested having a Palestinian distributor handle distribution in the West Bank—a significant economic opportunity. But when Ben & Jerry's learned that the distributor, naturally, wanted to increase sales in the territory, they nixed it. As they explained, we had to get the number of pints in the West Bank down to zero, because they were determined that Ben & Jerry's ice cream not be sold, at all, in East Jerusalem and the West Bank.

When I refused to bow to the boycott and to break the law, Unilever essentially fired me despite assuring me on multiple occasions that my contract would be renewed. Terminating my license solely because I refused to commit a crime is a violation of U.S. law. You cannot, as a condition of a contract, demand that a party do something illegal.

Even more upsetting is the hypocrisy. First, Unilever continues to sell thousands of its own products, including Hellman's mayonnaise, Dove soap, and its own Magnum and Strauss ice creams, in the West Bank and East Jerusalem. Second, how can Unilever and Ben & Jerry's look at themselves in the mirror? They speak about social justice yet are quick to throw hundreds of employees who have been loyal to the company for so many years under the bus. I refuse to abandon my people like that. And it is Palestinians who will be harmed the most. Today, a company is demanding that I stop providing ice cream to customers in the West Bank and East Jerusalem, but tomorrow it could be medicine or life-saving technology. Discrimination is wrong and treating human beings as political pawns is shameful.

I'm not the only one who recognizes what Unilever is doing is unlawful and misguided. Since the boycott was announced, Unilever has suffered innumerable blows. The state pension funds of New York, New Jersey, Florida, Illinois, Arizona and Texas have withdrawn nearly $1 billion in

investments; members of Congress have urged the Securities and Exchange Commission to investigate; and Terry Smith, one of Unilever's biggest investors, has slammed the company publicly for losing its way and focusing on political issues at the expense of financial performance.

I expected, after all this, that Unilever would recognize its mistake. But instead, after months of silence, the company recently claimed it is working on a "new arrangement" to remain in Israel—presumably without me or my employees. So I had no choice but to take them to court.

Earlier this month I sued Unilever and Ben & Jerry's to stop them from shutting down my business and harming the people we have worked so hard all these years to support: my nearly 200 employees; hundreds of suppliers, distributors and farmers who rely on Ben & Jerry's Israel; students who participate in coexistence programs we sponsor; and millions of consumers. If Unilever and Ben & Jerry's sincerely desire to help, rather than harm all of these people, they will reverse their decision and renew my license.