## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

AVI AVRAHAM ZINGER and
AMERICAN QUALITY PRODUCTS
LTD.,

Plaintiffs,

-against-

BEN & JERRY'S HOMEMADE, INC.,
UNILEVER UNITED STATES, INC.
and CONOPCO, INC.,

Defendants.

**Civ. No. 2:22-cv-01154-ES-JBC**

**Hon. Esther Salas**

ORAL ARGUMENT
REQUESTED

Motion Day:  June 6, 2022

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**GIBBONS P.C.**

One Gateway Center
Newark, NJ 07102-5310

**CRAVATH, SWAINE & MOORE LLP**

825 Eighth Avenue
New York, NY 10019

*Attorneys for Defendants*

Dated: May 2, 2022

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ...........................................................................4

    A. The Parties ..................................................................................4

    B. The License Agreement ..............................................................5

    C. B&J Informs AQP that It Will Not Enter Into a New Agreement Following the Expiration of the License Agreement. ...........................7

    D. Complaint ....................................................................................8

    E. AQP's Motion for Preliminary Injunction. .........................................10

    F. Arbitration Demand.....................................................................10

ARGUMENT ............................................................................................11

I.   AQP's Claims Against B&J Should Be Dismissed With Prejudice Under Rule 12(b)(6) for Failure to State a Claim.........................................11

    A. New York Law Applies to All of AQP's Claims.................................11

    B. AQP Fails To State A Claim Against B&J For Wrongful Termination. ...............................................................................12

    C. AQP Fails To State A Claim Against B&J For Breach Of Contract. ...................................................................................14

    D. AQP Fails To State A Claim Against B&J For Breach of the Implied Covenant. ......................................................................18

II.   The Claims Against Conopco and UNUS Should Be Dismissed with Prejudice Because They Are Not Parties to the License Agreement. ...........22

III.   AQP's Claims Against B&J, Conopco and UNUS Can Also Be Dismissed in Favor of Arbitration. ................................................................23

A.     AQP's Claims Against B&J Can Be Dismissed Because They Are Subject to a Valid New York Arbitration Provision. ...................24

     i.     The Agreement to Arbitrate is Valid. .......................................25

     ii.    AQP's Claims Against B&J Fall Within the Scope of the Arbitration Clause. ...................................................................26

     iii.   The Arbitration Clause Requires Arbitration in New York...................................................................................................28

B.     To the Extent Conopco and UNUS are Subject to the License Agreement, AQP's Claims Against Them Can Be Dismissed in Favor of Arbitration.............................................................................29

IV.   Plaintiff Zinger's Claim for False Light Invasion of Privacy Against All Defendants Should Be Dismissed Under Rule 12(b)(6). ........................30

CONCLUSION .....................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A & V 425 LLC Contracting Co. v. RFD 55th St. LLC*,
830 N.Y.S.2d 637 (Sup. Ct. 2007)........................................................22

*Adiel v. Coca-Cola Bottling Co. of New York*,
No. 95 CIV. 0725 (WK), 1995 WL 542432 (S.D.N.Y. Sept. 13,
1995) ...................................................................................................21

*Allenby, LLC v. Credit Suisse, AG*,
134 A.D.3d 577 (N.Y. App. Div. 1st Dep't 2015) ................................23

*Am. Express. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)............................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................35

*AT&T Techs., Inc. v. Comm'ns Workers of Am.*,
475 U.S. 643 (1986)............................................................................26

*Atkinson v. Mobil Oil Corp.*,
205 A.D.2d 719 (N.Y. App. Div. 2d Dep't 1994) .................................15

*Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*,
407 F. Supp. 3d 274 (S.D.N.Y. 2019) ..................................................25

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................34

*Bellak v. Wells Fargo & Co.*,
No. CV-17-2757, 2017 WL 6496563 (D.N.J. Dec. 19, 2017) ..............30

*Bevilacque v. Ford Motor Co.*,
199 A.D.2d 359 (N.Y. App. Div. 2d Dep't 1993) .................................12

*Bib Const. Co. v. City of Poughkeepsie*,
273 A.D.2d 186 (N.Y. App. Div. 2d Dep't 2000) .................................13

*Catlyn & Derzee, Inc. v. Amedore Land Devs.*,
LLC, 166 A.D.3d 1137 (N.Y. App. Div. 3d Dep't 2018) ......................19

iii

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
  584 F.3d 513 (3d Cir. 2009) ...............................................................26

*Cibenko v. Worth Publishers, Inc.*,
  510 F. Supp. 761 (D.N.J. 1981) ........................................................31

*Clifden Futures, LLC v. Man Fin., Inc.*,
  858 N.Y.S.2d 580 (Sup. Ct. 2008)................................................13, 14

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
  976 F.3d 239 (2d Cir. 2020) ..............................................................20

*Deer Park Enterprises, LLC v. Ail Sys., Inc.*,
  57 A.D.3d 711 (N.Y. App. Div. 2d Dep't 2008) ...............................19

*Econo-Car Int'l v. Antilles Car Rentals*,
  499 F.2d 1391 (3d Cir. 1974) .....................................................3, 24, 28

*Edelman v. Croonquist*,
  Civ. A. No. 09-1938 (MLC), 2010 WL 1816180 (D.N.J. May 4,
  2010) ...................................................................................................33

*Emri v. Evesham Twp. Bd. of Educ.*,
  327 F. Supp. 2d 463 (D.N.J. 2004) ....................................................33

*Essex v. Children's Place, Inc.*,
  No. 15–5621, 2017 WL 6000347 (D.N.J. Dec. 4, 2017)....................25

*In re Exide Techs.*,
  544 F.3d 196 (3d Cir. 2008) ..............................................................28

*Gold Lion Steel v. Global Merchant Cash, Inc.*,
  Civil No. 21-cv-10702 (KSH) (CLW), 2022 WL 596997 (D.N.J.
  Feb. 28, 2022) ...........................................................................3, 24, 28

*Gottwald v. Sebert*,
  193 A.D.3d 573 (N.Y. App. Div. 1st Dep't 2021) ............................20

*Hautz Constr., LLC v. H&M Dep't Store*,
  Civ. No. 12-3478 FLW, 2012 WL 5880370 (D.N.J. Nov. 20, 2012) ...............29

*Howell v. New York Post Co.*,
  81 N.Y.2d 115 (1993) ........................................................................30

iv

*Ingris v. Drexler*,
No. CIV.A-14-2404 ES (MAH), 2015 WL 1472657 (D.N.J. Mar.
30, 2015) ................................................................................................31

*King Penguin Opportunity Fund III, LLC v. Spectrum Group Mgt.
LLC*,
187 A.D.3d 688 (N.Y. App. Div. 1st Dep't 2020) ...............................20

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) (*per curiam*) ........................................................24

*Launch Fitness, LLC v. GoPerformance Franchising, LLC*,
Civ. No. 13–216, 2013 WL 1288253 (D.N.J. Mar. 26, 2013) .....................28, 29

*M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*,
852 F. Supp. 2d 324 (W.D.N.Y. 2012) ...............................................15

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ................................................................................28

*Maldonado v. Olympia Mech. Piping & Heating Corp.*,
777 N.Y.S.2d 730 (N.Y. App. Div. 2d Dep't 2004) ...........................15

*Marine Midland Bank v. Rome Polymer, Inc.*,
244 A.D.2d 967 (N.Y. App. Div. 4th Dep't 1997) .............................14

*Mars Assocs., Inc. v. City of New York*,
70 A.D.2d 839 (N.Y. App. Div. 1st Dep't 1979), *aff'd*, 53 N.Y.2d
627 (1981) ...........................................................................................14

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*,
83 A.D.3d 804 (N.Y. App. Div. 2d Dep't 2011) ................................12

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ...............................................................7

*Romaine v. Kallinger*,
537 A.2d 284 (1988) ...........................................................................31

*SBR Roofing, Inc. v. Richfield Springs Cent. Sch. Dist.*,
303 A.D.2d 886 (N.Y. App. Div. 3d Dep't 2003) ..............................13

*Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.*,
66 A.D.3d 985 (N.Y. App. Div. 2d Dep't 2009) ................................12

v

*Shaffer v. Graybill*,
    68 F. App'x 374 (3d Cir. 2003) ...................................................24, 28

*Sheth v. New York Life Ins. Co.*,
    273 A.D.2d 72 (N.Y. App. Div. 1st Dep't 2000) .............................19

*Stanley Agency v Behind the Bench*,
    No. 7661/08, 2009 WL 975790 (Sup. Ct. Apr. 13, 2009) ..................22

*Sud v. Sud*,
    621 N.Y.S.2d 37 (N.Y. App Div. 1st Dep't 1995) ...........................15

*Summit Rest. Repairs & Sales, Inc. v. New York City Dep't of Educ.*,
    201 A.D.3d 612 (N.Y. App. Div. 1st Dep't 2022) ...........................13

*Tang v. Jinro Am., Inc.*,
    No. CV-03-6477 (CPS), 2005 WL 2548267 (E.D.N.Y. Oct. 11,
    2005) *adhered to on reconsideration* 2008 WL 4163183 (E.D.N.Y.
    Sept. 4, 2008) ....................................................................20

*Trianco, LLC v. Int'l Bus. Machines Corp.*,
    271 F. App'x 198 (3d Cir. 2008) ..................................................19

*Trippe Mfg. Co. v. Niles Audio Corp.*,
    401 F.3d 529 (3d Cir. 2005) .......................................................24

*Twinkle Play Corp. v. Alimar Properties, Ltd.*,
    186 A.D.3d 1447 (N.Y. App. Div. 2d Dep't 2020) .....................19, 21

*Woodhill Elec. v. Jeffrey Beamish, Inc.*,
    904 N.Y.S.2d 232 (N.Y. App. Div. 3d Dep't 2010).........................15

**Statutes & Rules**

9 U.S.C. § 4 ...............................................................3, 4, 24, 28

FAA Section 2 ...................................................................2, 25

Fed. R. Civ. P. 12(b)(6)........................................................passim

**Other Authorities**

Restatement (Second) of Torts § 652E ...........................................31

## PRELIMINARY STATEMENT

This case concerns the expiration of a license agreement (the "License Agreement") between Plaintiff American Quality Products Ltd. ("AQP") and Defendant Ben & Jerry's Homemade, Inc. ("B&J").[1]  The License Agreement will expire, by its terms, on December 31, 2022.  (Compl. ¶ 42.)  The agreement provides that B&J has a "right of non-renewal at the end of the stated term[]" that is "absolute".  (Compl., Attach. A. § 24.11.)  Consistent with these provisions, on July 19, 2021, B&J told AQP that it had decided not to enter into a new agreement with AQP after the License Agreement expires.

*AQP has failed to state a claim against B&J.*  AQP asserts that B&J breached the License Agreement and its implied covenant of good faith, but all of AQP's claims against B&J are premised on the incorrect notion that B&J is "terminating" the License Agreement.  These claims all fail because there has been no termination.  Instead, the License Agreement, which has a limited duration, is going to expire by its terms.  AQP nevertheless argues breach of the existing License Agreement on the theory that the reasons underlying B&J's decision not to enter into a *new* License Agreement are unlawful.  But B&J's reasons for non-renewal are irrelevant, because the License Agreement expressly grants B&J a

---

[1] The License Agreement is attached as Attachment A to Plaintiffs' Complaint. (Dkt. 1.)

right of non-renewal that is "absolute", and AQP agreed to waive any claims arising from non-renewal.  (*Id.*)  The Court should not override those express contractual terms and compel B&J to enter a new agreement, nor should it dictate the terms of a brand new agreement between the parties.  In addition, the Complaint does not and cannot allege facts indicating that B&J breached any provision of the contract, explicit or implied.  Therefore, the Court should dismiss those claims with prejudice for failure to state a claim under Rule 12(b)(6). (Section I.)

> ***AQP has failed to state a claim against Conopco and UNUS.***  AQP also asserts contractual and quasi-contractual claims against two B&J affiliates, Conopco, Inc. ("Conopco") and Unilever United States, Inc. ("UNUS")—neither of which is a party to the License Agreement.  (Compl. ¶¶ 4, 5.)  These claims should be dismissed with prejudice under Rule 12(b)(6), as a plaintiff cannot maintain a claim for breach of an express term or an implied covenant against non-parties to the contract.  Even if Conopco and UNUS were proper defendants, AQP's claims against them would fail for the same reasons as AQP's claims against B&J do—namely that the License Agreement has not been terminated and AQP has failed to identify any provision of the License Agreement that either Conopco or UNUS breached.  (Section II.)

*All of AQP's claims are subject to an arbitration clause.*  The Court can also dismiss all of AQP's claims in favor of arbitration.  AQP's three claims against B&J are subject to a valid and enforceable arbitration provision in the License Agreement, which provides that, "upon written demand of either party, any claim or controversy concerning the subject matter hereof shall be submitted to arbitration pursuant to the then prevailing American Arbitration Rules".  (Compl., Attach. A § 32.2.)  On March 17, 2022, B&J served a demand for arbitration on AQP in accordance with Section 32.2 of the License Agreement.  (Bornstein Decl., Ex. 1.)  There is no dispute that the License Agreement is a "valid and binding" contract (Compl. ¶ 80), and it is indisputable that AQP's three claims against B&J "concern[] the "subject matter" of the License Agreement.  Accordingly, AQP's claims against B&J are subject to arbitration and can be dismissed on that basis.[2] (Section III.A.)  Moreover, to the extent the Court concludes that Conopco and UNUS are not subject to dismissal because they should be treated as bound by the License Agreement, then AQP's claims against them would also be subject to the

---

[2] The License Agreement requires the arbitration to occur in New York.  (*See* Compl., Attach. A § 32.3.)  Because the Federal Arbitration Act does not authorize district courts to compel arbitration outside their district, *see* 9 U.S.C. § 4, the proper procedural path is to dismiss.  *See, e.g.*, *Econo-Car Int'l v. Antilles Car Rentals*, 499 F.2d 1391, 1394 (3d Cir. 1974); *Gold Lion Steel v. Global Merchant Cash, Inc.*, Civil No. 21-cv-10702 (KSH) (CLW), 2022 WL 596997, at *6 (D.N.J. Feb. 28, 2022).

agreement's arbitration clause and should likewise be dismissed on that basis. (Section III.B.)

       ***Zinger has failed to state a claim.***  Plaintiff Zinger asserts claims for "false light invasion of privacy" against all three Defendants.  These claims should be dismissed, among other reasons, because the Complaint does not plead facts showing that any Defendant made a statement about Zinger that was false, much less a knowingly false statement that is highly offensive.  (Section IV.)

## STATEMENT OF FACTS

### A.    The Parties

       Defendant B&J manufactures, distributes and sells ice cream.  (Compl. ¶ 3.)  B&J is a Vermont corporation headquartered in Burlington, Vermont, and is a subsidiary of Defendant Conopco, a New York corporation headquartered in Englewood Cliffs, New Jersey.  (*Id.* ¶¶ 3,5.)  Conopco is a subsidiary of Defendant UNUS, a Delaware corporation headquartered in Englewood Cliffs, New Jersey.  (*Id.* ¶ 4.)

       Plaintiff Avi Avraham Zinger is a citizen of Israel and the sole beneficial owner of Plaintiff AQP.  (*Id.* ¶¶ 1, 2.)  AQP is an Israeli limited liability company headquartered in Yavne, Israel.  (*Id.* ¶ 2.)

**B.    The License Agreement**

B&J has granted AQP certain rights to manufacture and distribute B&J's proprietary ice cream products in Israel.  (*Id.* ¶¶ 14, 17.)  At issue here is a contract formed between AQP and B&J in 2004 (the "License Agreement"), which remains in effect today.[3]  (*Id.* ¶¶ 28, 42.)  The License Agreement's relevant provisions are set forth below.

- Section 4.1 defines the "Initial Term" of the License Agreement as December 18, 2001 to June 24, 2005.  (Compl., Attach. A § 4.1.)

- Section 4.2 provides AQP with a right to extend the License Agreement under certain circumstances "for one (1) additional consecutive term of seven (7) years", *i.e.*, until June 24, 2012 (the "Renewal Term").  (*Id.* § 4.2.)

- Section 24.11 gives B&J an "absolute" right not to renew the License Agreement at the end of the agreement's term and waives any liability for non-renewal.  It provides as follows:

    "In the event of termination or non-renewal of this Agreement at the end of the Initial Term or the Renewal Term, or any sooner termination for any reason, Ben & Jerry's will be freed and discharged, and Licensee [AQP] hereby expressly releases and discharges Ben & Jerry's, of and from any and all obligations and liabilities whatsoever, arising hereunder or in connection with any manner or thing relating to, or in any manner connected with, the subject matter of this Agreement.  *The foregoing right of*

---

[3] Another Unilever entity not named as a defendant was also a party to the License Agreement.

*termination and the additional right of non-renewal at the end of the stated terms are absolute* (such right of nonrenewal being subject only to the rights of the Licensee pursuant to Section 4.2 with respect to the Renewal Term), and *neither Ben & Jerry's nor the Licensee will be liable to the other because of termination or non-renewal hereof (whether with or without cause)* for compensation, reimbursement, or damages on account of the loss of prospective profits on anticipated sales or on account of expenditures, investments, leases or commitments in connection with the business or goodwill of Ben & Jerry's or Licensee, or for any reason whatsoever." (emphasis added)  (*Id.* § 24.11.)

- Section 32.1 provides that the "Agreement and any disputes arising under or related thereto (whether for breach of contract, tortious conduct or otherwise) shall be governed and construed in accordance with the laws of the State of New York without reference to its conflicts of law principles".  (*Id.* § 32.1.)

- Section 32.2 provides that "upon written demand of either party, any claim or controversy concerning the subject matter hereof shall be submitted to arbitration pursuant to the then-prevailing American Arbitration Association rules (the 'Rules') before a single arbitrator chosen by the parties, but if the parties cannot agree on an arbitrator, then the arbitrator shall be chosen as provided in the Rules".  (*Id.* § 32.2.)

- Section 32.3 provides that "[t]he arbitration proceeding shall be held at an office of the American Arbitration Association in the City of New York, U.S.A. or in such other city as the parties may agree upon at the time arbitration is requested".  (*Id.* § 32.3.)

The parties subsequently amended the License Agreement "to extend the term through and including December 31, 2017". (Bornstein Decl., Ex. 7; *see also* Compl. ¶ 42.) The amendment also granted AQP the option to "renew the rights granted hereunder for one (1) additional Consecutive term of five (5) years", *i.e.*, until December 31, 2022, which is the date on which the License Agreement will expire. (Bornstein Decl., Ex. 7; Compl. ¶ 42.)[4]

## C.   B&J Informs AQP that It Will Not Enter Into a New Agreement Following the Expiration of the License Agreement.

In February 2020, Zinger approached B&J concerning a possible extension of the parties' arrangement beyond the License Agreement's expiration on December 31, 2022. (Compl. ¶¶ 50-52.) At the time, B&J's CEO responded in an email stating: "I look forward to extending it". (*Id.* ¶ 52.) In October 2020, Zinger sent a second email to B&J's CEO, again asking to begin discussions about extending the relationship beyond the expiration of the License Agreement. (*Id.* ¶ 56.) B&J's CEO responded: "I agree we need to extend". (*Id.*) Following these

_____

[4] Although Plaintiffs did not attach the amendment to their Complaint, Plaintiffs' claims are obviously based on the License Agreement as amended, including specifically the extension of the term of the License Agreement through the end of 2022. (Compl. ¶ 42.) Accordingly, the Court may consider the amendment to the License Agreement on this motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

emails, the parties conducted discussions intended to address concerns raised by B&J's independent Board of Directors about the manner in which B&J's products are sold in Israel.  (*Id.* ¶¶ 57-58.)  The parties never executed a new license agreement extending beyond December 31, 2022.  (*Id.* ¶ 59.)

On July 19, 2021, B&J notified AQP by letter that B&J had decided to "let the License Agreement . . . expire on December 31, 2022".  (*Id.*)  B&J further told AQP in the July 2021 letter that the "business relationship remains a priority for Ben & Jerry's until the expiration of the License Agreement".  (*Id.*)  On the same day, B&J released a statement on its website stating that B&J would not renew the License Agreement "when it expires at the end of next year".[5]  (*Id.* ¶ 60.)

The License Agreement remains in effect today and will expire pursuant to its terms on December 31, 2022.  (*Id.* ¶¶ 51, 59.)

**D.     Complaint**

On March 3, 2022, Plaintiffs commenced this action, asserting four causes of action against all Defendants:  (i) a claim by Plaintiff AQP for breach of contract; (ii) a claim by Plaintiff AQP for wrongful termination; (iii) a claim by Plaintiff AQP for breach of the implied covenant of good faith and fair dealing;

---

[5] Plaintiffs allege that this statement was issued by "Unilever" or "Unilever USA" (Compl. ¶¶ 60-61), but the press release itself, which is properly considered on this motion (*see* note 4 above), unambiguously shows that it was issued by B&J.  (Bornstein Decl., Ex. 8.)

and (iv) a claim by Plaintiff Zinger for false light invasion of privacy. (Compl. ¶¶ 79-104.)

  *First*, AQP claims that Defendants materially breached the License Agreement. AQP alleges that B&J "openly and notoriously declar[ed] to the entire world that they would not renew the contract" and "mismanag[ed] [the License Agreement] and adopt[ed] policies that were contradictory and confusing and not authorized by [its terms]". (*Id.* ¶¶ 82-83.) AQP further alleges that B&J breached the License Agreement by "demanding that Plaintiffs stop selling Ben & Jerry's ice cream in the Areas in violation of [] Israeli laws", a consent decree with the Israeli Competition Authority ("ICA") and certain "policies" of the United States, New Jersey and New York. (*Id.* ¶¶ 84-90.) The Complaint does not specify any provision of the License Agreement that was allegedly breached.

  *Second*, AQP brings a "wrongful termination" claim, based on Defendants' "refusal to renew" the License Agreement. (*Id.* ¶ 93.) AQP alleges that Defendants' decision not to renew was "based entirely on Plaintiffs' objection to Defendants' unlawful demand that Plaintiffs violate the laws". (*Id.*)

  *Third*, AQP alleges that Defendants breached the implied covenant of good faith and fair dealing by "requiring Plaintiffs to engage in unlawful conduct as a condition of continuing their . . . relationship with B&J . . . by curtailing that relationship based on Plaintiffs' refusal to engage in such unlawful conduct" and

9

by "encourag[ing] the Plaintiffs to continue performing under the [License] Agreement in the expectation it would be renewed and [making] statements and representations causing Plaintiffs to rely upon those statements and representations and expand their business". (*Id.* ¶¶ 98-99.)

       *Fourth*, in his claim for false light invasion of privacy, Zinger alleges that his reputation was damaged by "Defendants' public statements concerning the non-renewal of his company's License Agreement". (*Id.* ¶ 103.)

### E.    AQP's Motion for Preliminary Injunction.

       On March 11, 2022, Plaintiffs filed a motion for preliminary injunction, requesting that the Court "prohibit[] Defendants from terminating the relationship pending final resolution of this case". (Dkt. 4-1 at 40.) Defendants opposed this motion on March 29, 2022, requesting that this Court "enforce the terms of the License Agreement and deny AQP's Motion". (Dkt. 39 at 5.) Plaintiffs replied to Defendants' opposition on April 5, 2022. (Dkt. 40.)

### F.    Arbitration Demand.

       On March 17, 2022, Defendants served on AQP "a written demand for arbitration of all claims and controversies in the Action that are subject to Section 32.2" of the License Agreement. (Bornstein Decl., Ex. 1.) Defendants explained that they were "prepared to proceed in the Action, in court, by responding to Plaintiffs' motion for preliminary injunction and moving to dismiss

all claims in the Action, ***provided*** that Plaintiffs agree . . . not to argue that Defendants have waived any right to require arbitration of any claim that survives the motion to dismiss".  (*Id.*)  On March 22, 2022, Plaintiffs agreed "that proceeding with the preliminary injunction motion is not a waiver of defendants' or plaintiffs' positions with respect to the arbitrability of issues in the case" but "reserve[d] the right . . . to assert all claims, defenses, arguments and positions, substantive and procedural" with respect to the motion to dismiss.  (Bornstein Decl., Ex. 2.)  Following additional correspondence to clarify Plaintiffs' position (*see* Bornstein Decl., Ex. 3), Plaintiffs "declin[ed] to foreclose any positions [they] may take" with respect to the waiver of arbitration rights if Defendants proceeded with the motion to dismiss in court.  (*Id*., Ex. 4.)  Plaintiffs did not agree to dismiss any of their claims in favor of arbitration.  (*See id*., Exs. 5-8.)

## ARGUMENT

## I. AQP's Claims Against B&J Should Be Dismissed With Prejudice Under Rule 12(b)(6) for Failure to State a Claim.

### A. New York Law Applies to All of AQP's Claims.

As an initial matter, all claims brought by AQP are subject to the choice of law provision in the License Agreement, which provides that the "Agreement and any disputes *arising under or related thereto (whether for breach of contract, tortious conduct or otherwise)* shall be governed and construed in accordance with *the laws of the State of New York* without reference to its conflicts

of law principles." (Compl., Attach. A § 32.1 (emphasis added).)  Because each of

AQP's claims is "arising under or related" to the License Agreement, each is

governed by "the laws of the State of New York".  (*Id.*)

### B.     AQP Fails To State A Claim Against B&J For Wrongful Termination.

Under New York law, a plaintiff asserting a claim for "wrongful

termination" of contract must prove the same elements necessary to prove a claim

for breach of contract.[6]  Specifically, the plaintiff must prove that the supposed

"termination" violated the agreement.  *See Bevilacque v. Ford Motor Co.*, 199

A.D.2d 359, 361 (N.Y. App. Div. 2d Dep't 1993) (noting that "[p]laintiff's breach

of contract cause of action [is] based on the alleged wrongful termination of the

Agreement" and applying the elements for breach of contract to assess plaintiff's

wrongful termination claim); *see also Schaefer v. Brookdale Univ. Hosp. & Med.*

*Ctr.*, 66 A.D.3d 985, 985 (N.Y. App. Div. 2d Dep't 2009).  A plaintiff asserting a

claim for wrongful termination of contract must also prove that the contract has, in

fact, been terminated.  *See, e.g.*, *Summit Rest. Repairs & Sales, Inc. v. New York*

*City Dep't of Educ.*, 201 A.D.3d 612, 612-13 (N.Y. App. Div. 1st Dep't 2022); *Bib*

---

[6] A plaintiff alleging breach of contract must establish "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages".  *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806 (N.Y. App. Div. 2d Dep't 2011).

*Const. Co. v. City of Poughkeepsie,* 273 A.D.2d 186, 187 (N.Y. App. Div. 2d Dep't 2000)*; see also SBR Roofing, Inc. v. Richfield Springs Cent. Sch. Dist.*, 303 A.D.2d 886, 887 (N.Y. App. Div. 3d Dep't 2003)*.* AQP's wrongful termination fails as a matter of law because the Complaint does not, and cannot, allege that the License Agreement has been terminated. AQP tries to equate "termination" with "non-renewal". However, all parties agree that the License Agreement is in effect today, and it is indisputable that it will expire by its terms on December 31, 2022. (Compl. ¶ 42.)

Even if the attempt to reclassify the non-renewal as a termination were successful, AQP's wrongful termination claim still would fail because the Complaint does not and cannot identify any obligation in the License Agreement that B&J has breached by deciding not to renew. *See Clifden Futures, LLC v. Man Fin., Inc.*, 858 N.Y.S.2d 580, 583 (Sup. Ct. 2008) (explaining that "the complaint must allege the essential terms of the contract, including the specific provisions upon which liability is predicated"). There is no provision in the License Agreement that requires B&J to extend or renew the agreement beyond its expiration date. To the contrary, in the License Agreement, AQP acknowledged that B&J's right *not* to renew the License Agreement is "absolute", and AQP expressly waived any and all claims arising from non-renewal. Section 24.11 of the License Agreement provides, in relevant part:

"The . . . right of termination and the additional *right of non-renewal* at the end of the stated terms are ***absolute*** . . . and neither Ben & Jerry's nor the Licensee will be liable to the other *because of termination or non-renewal hereof* (whether with or without cause) . . . ." (Compl., Attach. A, § 24.11 (emphases added).)

AQP does not and cannot offer any basis for this Court to disregard the express terms of Section 24.11, which provide B&J an "absolute" right not to renew and further provide that B&J will not be liable to AQP "because of termination or non-renewal". (*Id.*) Both B&J's non-renewal right and AQP's release of claims based on non-renewal bar AQP's wrongful termination claim. *See, e.g.*, *Marine Midland Bank v. Rome Polymer, Inc.*, 244 A.D.2d 967, 968 (N.Y. App. Div. 4th Dep't 1997) (noting that a "valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties" (internal quotation marks omitted)); *Mars Assocs., Inc. v. City of New York*, 70 A.D.2d 839, 840 (N.Y. App. Div. 1st Dep't 1979) (finding that a contractor waived all claims arising out of the contract because the "clause [was] clear upon its face" and "[b]y it, plaintiff waived and released all claims which it had against defendant arising out of the contract"), *aff'd*, 53 N.Y.2d 627 (1981).

### C.    AQP Fails To State A Claim Against B&J For Breach Of Contract.

To plead a defendant's breach of contract, the plaintiff must identify the specific contractual provision(s) allegedly breached. *Woodhill Elec. v. Jeffrey*

*Beamish, Inc.*, 904 N.Y.S.2d 232, 233 (N.Y. App. Div. 3d Dep't 2010) ("In order

to adequately plead a cause of action for breach of contract . . . the complaint must

allege the provisions of the contract that were allegedly breached."); *Maldonado v.*

*Olympia Mech. Piping & Heating Corp.*, 777 N.Y.S.2d 730, 731 (N.Y. App. Div.

2d Dep't 2004) ("[T]o plead a breach of contract cause of action, a complaint must

allege the provisions of the contract upon which the claim is based."); *Sud v. Sud*,

621 N.Y.S.2d 37 (N.Y. App Div. 1st Dep't 1995) (similar); *M & T Bank Corp. v.*

*LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 334 (W.D.N.Y. 2012) (similar).

AQP's breach of contract claim does not satisfy even this threshold

requirement.  AQP alleges that B&J materially breached the License Agreement by

"openly and notoriously declaring to the entire world that [it] would not renew the

contract", "mismanaging [the License Agreement] and adopting policies that were

contradictory and confusing and not authorized by [its terms]" and "demanding

that Plaintiffs stop selling Ben & Jerry's ice cream in the Areas in violation of []

Israeli laws".  (Compl. ¶¶ 82-84.)  AQP does not, however, specify any provision

of the License Agreement it claims B&J breached by these alleged actions.  *See*

*Atkinson v. Mobil Oil Corp.*, 205 A.D.2d 719, 720 (N.Y. App. Div. 2d Dep't 1994)

(dismissing claim because of the plaintiff's failure to "allege the provisions of the

contract upon which the claim is based").

The only contractual provisions referenced in the Complaint are Sections 12.1, 12.4, 15.20, 15.24, 23.2.4 and 25.1. (Compl. ¶¶ 29-33.) These provisions are not even capable of having been breached by B&J, because they do not impose any obligation on B&J. They instead impose obligations only on AQP. Sections 12.1 and 12.4 outline the terms for the payment of royalties from AQP to B&J. (*Id.* ¶ 30; Compl., Attach. A § 12.1 ("During the Renewal Term, *Licensee* shall pay Unilever an annual royalty fee equal to 3% of the Gross Turnover.") (emphasis added); *id.* § 12.4 ("All payments made *to* Ben & Jerry's (including payment to Unilever) pursuant to this Section 12 shall be paid to [*sic*] in U.S. dollars . . . .") (emphasis added).) B&J cannot logically have breached these provisions, and AQP does not allege that it did.

Likewise, Sections 15.20, 15.24 and 23.2.4 impose obligations on AQP, not B&J. Section 15.20 states that "*Licensee* '*shall comply*, and shall use its best efforts to ensure that *it . . . comply* with all applicable national or local laws and regulations in performing its duties hereunder and in any of its dealings with respect to the Products'". (Compl. ¶ 31) (emphasis added). Section 15.24 states: "*Licensee* agrees that *it shall not* act or omit to act in any way that would violate any of the export control laws or regulations of the U.S. and no party shall be required hereunder to act or omit to act in any way that it believes in good faith would violate any such law or regulation". (Compl. ¶ 31) (emphasis added).

16

Section 23.2.4 explains "it would be an immediate event of default—not subject to any opportunity to cure—for *Licensee to take any 'action or inaction* . . . [that] results in the loss of the right or forfeiture of the right, to do or transact business in the Territory'".  (Compl. ¶ 33) (emphasis added).  As a matter of law, B&J cannot have breached any provision that does not impose an obligation on B&J.

Lastly, Section 25.1 "requires *Licensee* to 'use best efforts to (1) maximize the sale of the Property Products in the Territory; and (2) promote the Wholesale Distribution thereof'".  (Compl. ¶ 29 (emphasis added).)  As with the preceding provisions, this obligation falls on AQP, not B&J, so B&J cannot have breached it.[7]

Rather than identify a contractual obligation that B&J failed to fulfill, AQP alleges that B&J made "unlawful demand[s]" that AQP engage in certain conduct.  (*Id.* at ¶¶  2, 4, 85, 87, 89, 90, 94.)  It is undisputed, however, that B&J did not cease performing under the License Agreement when AQP rejected those alleged demands.  (*Id.* at p. 4 (the agreement "*currently* goes to December 31,

---

[7] Without citation, the Complaint also quotes in passing Section 1.1 of the License Agreement, in which B&J gave AQP an "exclusive, non-transferable and personal license" to, among other things, manufacture and sell Ben & Jerry's ice cream.  (Compl. ¶ 29.)  AQP has not claimed that B&J has breached this provision.  To the contrary, AQP affirmatively acknowledges that it has been selling Ben & Jerry's ice cream in Israel under license from B&J throughout the term of the License Agreement.  (Compl. at 2, 3, 4; *id.* ¶¶ 15-17, 34-35, 41, 67-68.)

2022") (emphasis added).)  Even if—as AQP implies—B&J made the alleged "unlawful demand[s]" a condition of entering into a *new* agreement to begin next year, after the License Agreement expires, that would not be a breach of B&J's obligations under the *existing* agreement.  And even if it were, that breach could not give rise to the primary remedy sought by AQP—a Court-written compulsory license that would provide AQP with free reign to use B&J's intellectual property, including trademarks and know-how, on terms B&J has never agreed to.  AQP's breach of contract claim against B&J should be dismissed.

### D.    AQP Fails To State A Claim Against B&J For Breach of the Implied Covenant.

AQP alleges that B&J breached the implied covenant of good faith and fair dealing in two ways.  Each fails as a matter of law.

*First*, AQP asserts that B&J breached the implied covenant by "requiring Plaintiffs to engage in unlawful conduct as a condition of continuing their decades-old business relationship with B&J, and by curtailing that relationship based on Plaintiffs' refusal to engage in such unlawful conduct".  (Compl. ¶ 98.)  As a threshold matter, this allegation fails because it is entirely duplicative of AQP's breach of contract claim.  Specifically, AQP's breach of contract claim is predicated on the allegation that "Defendants breached the [License] Agreement by demanding that Plaintiffs stop selling Ben & Jerry's ice cream in the Areas, in violation of [] Israeli laws".  (*Id*. ¶ 84.)  The "unlawful

conduct" at issue in the implied covenant claim is the very same alleged "demand that Plaintiffs stop selling Ben & Jerry's ice cream in the Areas" articulated as the basis for AQP's breach claim.  In other words, these claims are founded on precisely the same alleged conduct.  AQP also seeks the same relief for the implied covenant claim as it seeks for the breach claim, further confirming they are duplicative.  New York courts routinely find that implied covenant claims arising "from the same operative facts and seek[ing] the same damages as the breach of contract claim[s]" are duplicative and therefore defective as a matter of law. *Catlyn & Derzee, Inc. v. Amedore Land Devs.*, LLC, 166 A.D.3d 1137, 1140 (N.Y. App. Div. 3d Dep't 2018); *see Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 73 (N.Y. App. Div. 1st Dep't 2000); *Deer Park Enterprises, LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (N.Y. App. Div. 2d Dep't 2008); *see also Trianco, LLC v. Int'l Bus. Machines Corp.*, 271 F. App'x 198, 204 (3d Cir. 2008).

Another fatal flaw in this implied covenant claim is that it conflicts with the express terms of the License Agreement.  Under New York law, the implied covenant "encompass[es] any promises which a reasonable person in the position of the promisee would be justified in understanding were included *and which are not inconsistent with the terms of the contract*".  *Twinkle Play Corp. v. Alimar Properties, Ltd.*, 186 A.D.3d 1447, 1448 (N.Y. App. Div. 2d Dep't 2020) (emphasis added); *see also Gottwald v. Sebert*, 193 A.D.3d 573, 582 (N.Y. App.

Div. 1st Dep't 2021).  The implied covenant cannot be used to create new terms

that are different from what the parties actually agreed.  *See Compania*

*Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 248 (2d Cir.

2020); *King Penguin Opportunity Fund III, LLC v. Spectrum Group Mgt. LLC*, 187

A.D.3d 688, 690 (N.Y. App. Div. 1st Dep't 2020).

        But that is what AQP is attempting to do.  The License Agreement has

a clear expiration date of December 31, 2022, and B&J has an "absolute" right

under the contract not to renew it.  (Compl., Attach. A. § 24.11.)  AQP's

contention that B&J had an implied obligation under the License Agreement to

"continu[e]" the parties' relationship (apparently in perpetuity) is directly contrary

to these express contractual terms.  Courts have previously rejected similar efforts

to misuse the implied covenant.  *See*, *e.g.*, *Tang v. Jinro Am., Inc.*, No. CV-03-

6477 (CPS), 2005 WL 2548267, at *9 (E.D.N.Y. Oct. 11, 2005) (applying New

York law and dismissing claim for breach of the implied covenant where "the

agreements between Plaintiff and Defendants did not require defendant to renew

the contracts after their expiration" and therefore "Defendants could not have

breached an implied covenant of good faith and fair dealing by terminating

Plaintiff's distribution rights"), *adhered to on reconsideration*, 2008 WL 4163183

(E.D.N.Y. Sept. 4, 2008); *Adiel v. Coca-Cola Bottling Co. of New York*, No. 95

CIV. 0725 (WK), 1995 WL 542432, at *3 (S.D.N.Y. Sept. 13, 1995) (applying

20

New York law and dismissing claim for breach of the implied covenant where "[t]he agreements at issue . . . in no respect required defendant to renew after" the agreement's expiration date).

　　　　　*Second*, AQP alleges that B&J breached the implied covenant by "encourag[ing] the Plaintiffs to continue performing under the [License] Agreement in the expectation it would be renewed and [making] statements and representations causing Plaintiffs to rely upon those statements and representations and expand their business".  (Compl. ¶ 99.)  None of these allegations, even if true, would establish a breach of the implied covenant.  As noted above, the implied covenant is a tool for filling unforeseeable gaps in agreements by implying terms that "a reasonable person in the position of the promisee would be justified in understanding were included" in the agreement.  *Twinkle Play Corp.*, 186 A.D.3d at 1448.  AQP does not identify any gap in the License Agreement for the implied covenant to fill, much less does it identify any implied obligation that B&J supposedly violated.  Instead, AQP focuses on alleged *extra-contractual* statements occurring many years after the License Agreement was executed.  (*See, e.g.*, Compl. ¶¶ 52, 56, 72, 99.)  These recent statements plainly were not "included" in or otherwise part of the parties' agreement; they are therefore

irrelevant to a claim for breach of the covenant of good faith and fair dealing that is implied *in the License Agreement* itself.[8]

## II.   The Claims Against Conopco and UNUS Should Be Dismissed with Prejudice Because They Are Not Parties to the License Agreement.

AQP's claims against Defendants Conopco and UNUS should be dismissed under Rule 12(b)(6) because neither Conopco nor UNUS is a party to the License Agreement.

AQP brings claims against Conopco and UNUS for breach of the License Agreement, wrongful termination of the License Agreement and breach of the covenant of good faith and fair dealing that is implied in the License Agreement.  However, it is undisputed that neither Conopco nor UNUS is a signatory to the License Agreement.  (Compl., Attach. A § 1.)  As a result, neither Conopco nor UNUS can be held liable for claims arising under the License Agreement.  *See A & V 425 LLC Contracting Co. v. RFD 55th St. LLC*, 830 N.Y.S.2d 637, 643 (Sup. Ct. 2007) ("As a general rule, in order for someone to be liable for a breach of contract, that person must be a party to the contract.");
*Stanley Agency v Behind the Bench*, No. 7661/08, 2009 WL 975790, at *12 (Sup.

---

[8] It is particularly odd for AQP to fault B&J for "encourag[ing]" AQP "to continue performing under the [License] Agreement".  (Compl. ¶ 99.)  AQP had a contractual *obligation* to "continue performing".  If AQP did not "continue performing", then AQP would have been in breach.

Ct., Apr. 13, 2009) (granting defendants' motion to dismiss because "only an entity that is a party to a contract may be liable for a breach of contract"); *Allenby, LLC v. Credit Suisse, AG*, 134 A.D.3d 577, 579 (N.Y. App. Div. 1st Dep't 2015) (dismissing claim for breach of the implied covenant because "Plaintiffs [did] not allege that [Defendant] was a party to the [contracts] at issue" and finding that "[i]f there is no contract with [Defendant], there can be no implied covenant claim against it").

To the extent that this Court holds that Conopco and UNUS may be treated as parties to the License Agreement, the claims against them should still be dismissed.  AQP has not alleged any separate conduct by either Conopco or UNUS, as distinct from the alleged actions of B&J, so the claims against Conopco and UNUS fail and should be dismissed with prejudice under Rule 12(b)(6), for the same reasons applicable to AQP's claims against B&J and detailed in Section I above.

**III.    AQP's Claims Against B&J, Conopco and UNUS Can Also Be Dismissed in Favor of Arbitration.**

This Court can also dismiss AQP's claims against all Defendants because there is a valid agreement to arbitrate these claims in New York.  (Compl., Attach. A § 32.3.)  Dismissal is appropriate where, as here, the parties' agreement calls for arbitration but that arbitration is to occur in a location outside this Court's territorial jurisdiction, such that the Court cannot simply compel arbitration.

**A.    AQP's Claims Against B&J Can Be Dismissed Because They Are Subject to a Valid New York Arbitration Provision.**

The arbitration of a dispute is required if:  (1) a valid arbitration agreement exists; and (2) the dispute is covered under the agreement.  *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  As explained below, AQP's claims against B&J should be arbitrated because (i) there is a valid arbitration provision in the License Agreement; and (ii) AQP's claims against B&J fall within the scope of that valid arbitration provision.

Ordinarily, in these circumstances, a court should grant a motion to compel arbitration.  *See* 9 U.S.C. § 4; *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (*per curiam*).  Here, there is a wrinkle:  the License Agreement requires the arbitration to take place in New York City.  (Compl., Attach. A § 32.3.)  Under the Federal Arbitration Act ("FAA"), however, this Court is empowered to compel arbitration to occur only within the District of New Jersey.  *See* 9 U.S.C. § 4 (empowering federal courts to compel arbitration only "within the district in which the petition for an order directing such arbitration is filed").  Where an agreement requires arbitration in a location that is in another judicial District, courts dismiss the claims in favor of allowing the arbitration to proceed.  *See Shaffer v. Graybill*, 68 F. App'x 374, 377 (3d Cir. 2003); *Econo-Car Int'l*, 499 F.2d at 1394; *Gold Lion Steel,* 21-cv-10702 (KSH) (CLW), 2022 WL 596997, at *6 (D.N.J. Feb. 28, 2022).

i.    <u>The Agreement to Arbitrate is Valid.</u>

Under Section 2 of the FAA, an arbitration clause in a commercial agreement that implicates interstate commerce "shall be valid, irrevocable, and enforceable" unless there exists a legal or equitable ground for revocation of the contract.  9 U.S.C. § 2.  Under the FAA, "courts must 'rigorously enforce' arbitration agreements according to their terms".  *Am. Express. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted).  Because arbitration is a matter of contract, courts apply the relevant state law in determining the validity of an agreement to arbitrate.  *Essex v. Children's Place, Inc.*, No. 15–5621, 2017 WL 6000347, at *4 (D.N.J. Dec. 4, 2017).  As noted above, the License Agreement has a choice-of-law provision specifying the application of New York law.  (Compl., Attach. A § 32.1.)  Under New York law, courts determine whether a valid agreement exists by considering the parties' intent, "which is generally discerned from the four corners of the document itself".  *Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*, 407 F. Supp. 3d 274, 282 (S.D.N.Y. 2019).[9]

The parties agree that the License Agreement is a "valid and binding contract".  (Compl. ¶ 80.)  That agreement includes an unambiguous arbitration

---

[9] The result would be the same under New Jersey law, which applies the same contract interpretation principles for assessing the existence of a valid agreement. *See Essex*, 2017 WL 6000347, at *4.

clause stating that (1) "any claim or controversy concerning the subject matter hereof shall be submitted to arbitration"; (2) the arbitration will proceed pursuant to the rules of the American Arbitration Association; and (3) the proceedings will be held in the New York City offices of the American Arbitration Association. (Compl., Attach. A §§ 32.1, 32.2, 32.3.)  Plaintiffs did not and could not make any claim as to the validity and enforceability of the arbitration clause; to the contrary, the License Agreement's arbitration clause is as "valid and binding" as the rest of the agreement.  (Compl. ¶ 80.)

ii. <u>AQP's Claims Against B&J Fall Within the Scope of the Arbitration Clause.</u>

With respect to the assessment of the scope of an arbitration agreement, the law is clear: "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause *is not susceptible* of an interpretation that covers the asserted dispute".  *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 526 (3d Cir. 2009).  There is no question the arbitration provision here is "susceptible" to an interpretation that covers AQP's claims against B&J; indeed, it is difficult to see how the arbitration provision could be understood *not* to cover them.

The License Agreement requires arbitration of "any claim or controversy concerning the subject matter hereof".  (Compl., Attach. A § 32.2.) All of AQP's claims against B&J "concern[] the subject matter" of the License Agreement and are therefore arbitrable.  Simply stating AQP's claims makes this clear:  a claim for wrongful termination *of the License Agreement*, a claim for breach *of the License Agreement* and a claim for breach of the covenant of good faith and fair dealing implied *in the License Agreement*.  (*See* Compl. ¶¶ 82-84, 93-94, 96-98.)  Each of those claims squarely "concerns" the License Agreement. None of those claims could exist without the License Agreement.  Unsurprisingly, therefore, the Complaint attaches and repeatedly invokes the License Agreement. (*See, e.g.*, *id.* at pp. 4-5 ("Defendants are liable for wrongful termination, for breach of *the License Agreement*, for breach of the implied covenant of good faith and fair dealing . . ."); *id.* ¶ 77 ("For the foregoing reasons, Plaintiffs are seeking immediate injunctive relief, pending the final outcome of litigation on the merits, to preserve the status quo and prevent Defendants from unlawfully refusing to renew the *License Agreement*"); *id.* ¶¶ 82-83 ("Defendants materially breached the *Agreement* by openly and notoriously declaring to the entire world that they would not renew the contract. . . . Defendants breached *the Agreement* by mismanaging it and adopting policies that were contradictory and confusing and not authorized by the Agreement"); *id.* ¶ 93 ("Defendants' refusal to renew [the Agreement] was

27

wrongful"); *id.* ¶¶ 96-97 ("*The Agreement* includes an implied covenant of good faith and fair dealing . . . Defendants have breached the implied covenant of good faith and fair dealing by their actions which undermine the purpose of *the Agreement* and have deprived the Plaintiffs of the benefit of their bargain") (emphases added).)  AQP's claims against B&J therefore fall squarely within the scope of the arbitration clause in Section 32.2.

       iii.     <u>The Arbitration Clause Requires Arbitration in New York.</u>

Although AQP's claims against B&J are clearly arbitrable, the FAA authorizes a district court to compel arbitration only "within the district in which the petition for an order directing such arbitration is filed".  9 U.S.C. § 4.  In other words, this Court may compel arbitration only if the arbitration is to occur in New Jersey.  The License Agreement states, however, that in the event of a dispute, "[t]he arbitration proceeding shall be held at an office of the American Arbitration Association in the City of New York".  (Compl., Attach. A § 32.3).  Forum selection clauses such as these are presumed valid and enforceable.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008).

Because the FAA does not formally authorize the Court to compel arbitration in the contractually selected forum (New York), the proper path is dismissal of AQP's claims against B&J, without prejudice to AQP's initiating an

arbitration.  *See Shaffer*, 68 F. App'x at 377; *Econo-Car*, 499 F.2d at 1394; *Gold Lion Steel*, 2022 WL 596997, at *6.  For example, in *Launch Fitness, LLC v. GoPerformance Franchising, LLC*, the parties' dispute was arbitrable but the forum selection clause required that arbitration to occur in Tennessee, and the court found that "the appropriate action is to dismiss this action in order to permit the parties to proceed to arbitration in Tennessee".  Civ. No. 13–216, 2013 WL 1288253, at *4 (D.N.J. Mar. 26, 2013); *see also Hautz Constr., LLC v. H&M Dep't Store*, Civ. No. 12-3478 FLW, 2012 WL 5880370, at *17 (D.N.J. Nov. 20, 2012) ("[F]ollowing *Econo-Car*, many district courts have opted to dismiss actions in which a party seeks to compel arbitration outside the court's own district.").

> **B.**     **To the Extent Conopco and UNUS are Subject to the License Agreement, AQP's Claims Against Them Can Be Dismissed in Favor of Arbitration.**

To the extent that this Court holds that Conopco and UNUS may be treated as parties to the License Agreement for purposes of AQP's contract claims against them (even though they are not signatories), those claims would be subject to the arbitration clause in Section 32.2.  The analysis set out above with respect to the arbitrability of AQP's claims against B&J would therefore apply to the claims against Conopco and UNUS, meaning that those claims would also be properly dismissed in favor of arbitration, as detailed in Section II.A above.

29

**IV.    Plaintiff Zinger's Claim for False Light Invasion of Privacy Against All Defendants Should Be Dismissed Under Rule 12(b)(6).**

Plaintiff Zinger's claim against all Defendants for false light invasion of privacy should be dismissed on the merits.  As a threshold matter, he has not identified the law that he contends should apply to his claim.  Regardless, his claim fails on the merits.  New York law, which governs the License Agreement, does not recognize such a cause of action.  And even if New Jersey law applied, his claim still ought to be dismissed because he has not pleaded the elements of the claim.  He has not identified any statements by Defendants that were untrue or that portrayed him in a false light, much less in a light that is highly offensive.

As an initial matter, Zinger has not identified what law he believes applies to his false light claim.  (Compl. ¶¶ 101-04.)  That alone warrants dismissal.  "Courts in the Third Circuit routinely hold that when a complaint alleges claims arising under state law, the plaintiff's failure to plead which State's laws apply to each cause of action may result in dismissal."  *Bellak v. Wells Fargo & Co.*, No. CV-17-2757, 2017 WL 6496563, at *3 (D.N.J. Dec. 19, 2017) (collecting cases).

Regardless of which State's law applies, Zinger has failed to state a claim.  New York law, which governs the License Agreement, does not recognize a cause of action for false light invasion of privacy.  *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 122-24 (1993).  While New Jersey recognizes such a cause of

action, Zinger has failed to plead the elements of the claim.  Under New Jersey

law, a plaintiff asserting a claim for false light invasion of privacy must

demonstrate "(a) the false light in which the other was placed would be highly

offensive to a reasonable person, and (b) the actor had knowledge of or acted in

reckless disregard as to the falsity of the publicized matter and the false light in

which the other would be placed".  *Romaine v. Kallinger*, 537 A.2d 284, 290

(1988) (quoting Restatement (Second) of Torts § 652E); *see also Cibenko v. Worth*

*Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981) (same).  For a statement to

be considered "highly offensive", it must be "a major misrepresentation of

[plaintiff's] character, history, activities or beliefs that serious offense may

reasonably be expected to be taken by a reasonable man in his position".

Restatement (Second) of Torts § 652E (1977); *see also Ingris v. Drexler*, No.

CIV.A-14-2404 ES (MAH), 2015 WL 1472657, at *4 (D.N.J. Mar. 30, 2015).  For

liability to attach, "it is essential that the matter publicized be untrue".  *Cibenko*,

510 F. Supp. at 766.

   Zinger's claims fail because he has not alleged that any Defendant

made a statement about him that was untrue.  As noted (*see* note 5 above and

accompanying text), Zinger does not identify *any* statement made by Conopco or

UNUS.  There are only two statements alleged in the Complaint (*see* Compl.

¶¶ 60-61), the first of which was made by B&J (Bornstein Decl., Ex. 8) and the

second of which was made by B&J's independent board (Bornstein Decl., Ex. 9).

Neither of those statements says anything untrue about Zinger.

*First*, B&J's press release reads, in relevant part, as follows:

> We believe it is inconsistent with our values for Ben & Jerry's ice cream to be sold in the Occupied Palestinian Territory (OPT).  We also hear and recognize the concerns shared with us by our fans and trusted partners.  We have a longstanding partnership with our licensee, who manufactures Ben & Jerry's ice cream in Israel and distributes it in the region.  We have been working to change this, and so we have informed our licensee that we will not renew the license agreement when it expires at the end of next year.

(Compl. ¶ 60.)  The first two sentences of this press release solely concern B&J's beliefs and values; they are not about Zinger whatsoever, nor could they be seen as "false", as they assert no fact.  The third sentence is undeniably accurate and indeed affirmatively alleged by Zinger in his Complaint.  B&J and AQP have had "a longstanding partnership", as Zinger himself alleges (*see* Compl. ¶ 59), and AQP does "manufacture Ben & Jerry's ice cream in Israel and distributes it in the region", as Zinger also alleges.  (*See* Compl. ¶ 28).  Having alleged the very same facts in his Complaint, Zinger cannot establish that this sentence is untrue.  The fourth sentence is again about B&J's actions, not Zinger's, but to the extent it references Zinger's company, this sentence is also indisputably correct.  B&J did "inform [AQP] that [B&J] will not renew the license agreement when it expires", as Zinger again alleges in his Complaint.  (*See* Compl. ¶ 59.)

*Second*, the statement issued by B&J's independent board does not mention Zinger or AQP at all.  (*See* Compl. ¶ 61.)  It therefore cannot supply the foundation for a false light claim.

Rather than identify any false statement about him, Zinger asks the Court to draw the inference that B&J's press release "permitted [Zinger] to be portrayed as a villain who discriminates among his customers and who is responsible for unlawful practices in the Areas".  (Compl. ¶ 103.)  That allegation, and the inference Zinger asks the Court to draw, is the precise opposite of what B&J actually said.  Rather than implying that Zinger "discriminates among his customers", the statement makes clear that AQP *did* sell ice cream in the Areas and that it was B&J (not AQP) that wished to stop doing so.  That does not place Zinger in a false light, because he does indeed wish to continue selling ice cream in the Areas.  (*See, e.g.*, Compl. ¶ 34 ("[Zinger] chose . . . to make Ben & Jerry's ice cream available throughout Israel *and the Areas* by distributing to supermarkets and gas station mini-markets throughout the region." (emphasis added)); *id.* at ¶ 40 ("Plaintiffs do, and always have, distributed Ben & Jerry's ice cream to all people in the Areas and all over Israel.").)

Because there are no facts alleging an untrue statement, Zinger cannot claim that B&J "significantly misrepresent[ed] the plaintiff's character, history, activities or beliefs".  *Edelman v. Croonquist*, Civ. A. No. 09-1938 (MLC), 2010

WL 1816180, at *7 (D.N.J. May 4, 2010).  Further, without an alleged untrue

statement, there can be no allegation that Defendants acted with knowledge of

falsity.  *See Emri v. Evesham Twp. Bd. of Educ.*, 327 F. Supp. 2d 463, 471 (D.N.J.

2004).  Zinger's claims would therefore fail under New Jersey law, even if that law

applied.

        Zinger's claims also fail for the independent reason that he has not

alleged sufficient facts to show that anyone has understood B&J's statement to

mean that Zinger "discriminates among his customers" or "is responsible for

unlawful practices".  (Compl. ¶ 103.)  Without any factual support, Zinger

contends that he "has become the object of derision and condemnation by many

members of the public", and he formulaically recites the cause of action for a false

light claim under New Jersey law (without identifying it as such), stating that

"[t]he false light in which Defendants have placed [Zinger] is highly offensive to a

reasonable person and has caused [Zinger] significant harm".  (*Id*. ¶ 104.)  But "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do".  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007).  Zinger offers not a single factual instance of any "derision"

or "condemnation" that he has suffered—much less a single factual instance of

34

anyone believing that Zinger was opposed to selling ice cream in the Areas.[10]  Of course, that should be unsurprising, because as explained above, B&J's press release neither said nor implied that Zinger took that view.  Without any facts showing that Zinger was actually perceived in a false light, his claim for false light invasion of privacy fails.

## **CONCLUSION**

For the foregoing reasons, this Court should: (i) dismiss AQP's claims against B&J, Conopco and UNUS under Rule 12(b)(6) for failure to state a claim, or in favor of arbitration; and (ii) dismiss Zinger's false light claims against B&J, Conopco and UNUS under Rule 12(b)(6) for failure to state a claim.

---

[10] Nor has Zinger alleged specifically that he has been harmed *in New Jersey*, such that it even makes sense to apply New Jersey's false light invasion of privacy law.  He contends in conclusory fashion that he has been harmed "around the world, including New Jersey" (Compl. ¶ 104), but he does not allege any *facts* to support that conclusion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring a complaint to assert "factual matter" because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  For example, he does not identify any publication in New Jersey that derides or condemns him, nor does he allege any other facts showing that he was harmed here.

Date:  May 2, 2022

Respectfully submitted,
BEN & JERRY'S HOMEMADE, INC.,
UNILEVER UNITED STATES, INC. and
CONOPCO, INC.

By their attorneys,

*/s/ Jennifer A. Hradil*
Jennifer A. Hradil
Thomas R. Valen
Jeffrey L. Nagel (admitted *pro hac vice*)
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
jhradil@gibbonslaw.com
jnagel@gibbonslaw.com
tvalen@gibbonslaw.com

Gary A. Bornstein (admitted *pro hac vice*)
Yonatan Even (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
gbornstein@cravath.com
yeven@cravath.com

**Certificate of Service**

   This is to certify that I have on May 2, 2022, electronically filed a true

and correct copy of Defendants' Memorandum of Law in Support of Defendants'

Motion to Dismiss Plaintiffs' Complaint and the supporting papers thereto, with

the Clerk of the Court using the ECF system, which will send notification of such

filings to all counsel of record.

             */s/ Jennifer A. Hradil*

            _____

              Jennifer A. Hradil